SOUTHWESTERN OIL COMPANY *v.* STATE OF TEXAS.

ERROR TO THE SUPREME COURT OF THE STATE OF TEXAS.

No. 119.    Argued March 2, 1910.—Decided April 4, 1910.

This court will not consider whether a state statute is unconstitutional under provisions of the Constitution other than those set up in the state court even if those provisions be referred to in the assignment of error.

On writ of error this court is not concerned with the question of whether the statute attacked as unconstitutional under the Fourteenth Amendment violates the state constitution if the state courts have held that it does not do so.

Whether the severity of penalties for non-compliance with a state statute renders it unconstitutional under the Fourteenth Amendment will not be considered in an action in which the State does not ask for any penalties.

The Fourteenth Amendment was not intended to cripple the taxing power of the States or to impose upon them any iron rule of taxation. This court will not speculate as to the motive of a State in adopting taxing laws, but assumes—the statute neither upon its face nor by necessary operation suggesting a contrary assumption—that it was adopted in good faith.

Except as restrained by its own or the Federal Constitution, a State may prescribe any system of taxation it deems best; and it may, without violating the Fourteenth Amendment, classify occupations, imposing a tax on some and not on others, so long as it treats equally all in the same class.

An occupation tax on all wholesale dealers in certain specified articles does not on its face deprive wholesale dealers in those articles of their property without due process of law or deny them the equal protection of the law because a similar tax is not imposed on wholesale dealers in other articles, and so held as to the Kennedy Act of Texas of 1905 levying an occupation tax on wholesale dealers in coal and mineral oils.

A Federal court cannot interfere with the enforcement of a state statute merely because it disapproves of the terms of the act, questions the wisdom of its enactment, or is not sure as to the precise reasons inducing the State to enact it.

100 Texas, 647, affirmed.

THE facts, which involve the constitutionality of certain provisions of the Kennedy Act of Texas of 1905 for taxing certain classes of business, are stated in the opinion.

*Mr. George C. Greer,* with whom *Mr. F. C. Proctor* and *Mr. D. E. Greer* were on the brief, for plaintiff in error.

*Mr. James D. Walthall,* with whom *Mr. R. V. Davidson,* Attorney General of the State of Texas, was on the brief, for defendant in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

This action was brought by the State of Texas in one of its own courts against the Southwestern Oil Company, a corporation of that State, to recover the amount of certain taxes alleged to be due under what is known as the Kennedy act. Chapter 148, General Laws of Texas, 1905, p. 358, providing

for the levy and collection of a tax upon individuals, firms, associations or other persons, owning, managing, operating or controlling for profit within the State certain specified kinds of business, including *wholesale* dealers in coal oil, etc., and prescribing penalties for violations of the act. The State recovered judgment for a part of that amount. Upon appeal , to the Court of Civil Appeals the judgment was affirmed, and the action of the latter court was afterwards affirmed by the Supreme Court of Texas. ·.

Upon this writ of error the Southwestern Oil Company contends here, as it contended in the state courts, that the statute under which the State proceeded was in violation of the : Constitution of the United States. ·

· The statute in question (§ 9) provides: "Each and every person, association of persons or corporation created by the laws of this or any other State or nation, which shall engage in their own name, or in the name of others, or in the name of their representatives or agents in this State, in the *wholesale* · business of coal oil, naphtha, benzine or any other mineral oils refined from petroleum, and any and all mineral oils, shall pay an annual tax of two per cent upon their gross receipts from any and all sales in this State of any of said articles in section 9 of this act hereinabove mentioned, and an annual tax of two per cent of the cash market value of any and all of said articles that may be received or possessed or handled · or disposed of in any manner other than by sale in this State; and it is hereby expressly provided that delivery to or pos- . session by any person, association of persons or corporation in this State of any of the articles hereinabove mentioned in section 9 of this act, from whatever source the same may have been received, shall for the purpose of this act be held and considered such a sale and such ownership and possession of such articles and property (where no sale is made) as will and shall subject the same to the tax herein provided for. . 'Said tax herein provided for shall be paid to the State Treasurer quarterly, and every such person, agent, association of per-

sons, or corporation so owning, controlling or managing such business shall, on or before the first day of April, and quarterly thereafter, report to the Comptroller under oath of the president, treasurer, superintendent or some other officer of said corporation or association, or some duly authorized agent thereof, the amount received by them from such business in this State. Should any person, association of persons or corporation, or the officers or agents of any such corporation, person or association of persons herein named, fail to make the report herein provided for, and pay said taxes for thirty days after the termination of any quarter of the year, then he shall be deemed guilty of a misdemeanor, and upon conviction shall be fined in any sum not less than fifty nor more than one hundred dollars. Each and every day after said thirty days have expired shall be deemed a separate offense. In addition thereto, in the event of the failure of the officers or agents of any such company or corporation to make the reports and pay said taxes, for thirty days after the termination of any quarter of the year, each and every such company or corporation, or their officers or agents so failing, shall forfeit and pay to the State the sum of twenty-five dollars for each day said report and payment are delayed, which forfeiture and taxes shall be sued for by the Attorney General in the name of the State. For the purpose of suits and prosecutions provided for in this article, venue and jurisdiction are hereby expressly conferred upon the courts of Travis County, and service may be had upon any officer or agent of such company or corporation in the State, and such service shall in all respects be held legal and valid. The tax herein levied shall be in addition to all other taxes levied by law."

The defendant insists that the statute is inconsistent with the Fourteenth Amendment of the Constitution of the United States, in the following particulars: That it arbitrarily selects and levies upon the *wholesale* business in coal oil, naphtha, benzine or other mineral oils refined from petroleum, and any and all mineral oils, a tax of from fifty to one hundred times

greater than is levied by the State upon wholesale business in other articles; that it . denies to the defendant the equal protection of the laws, in that the failure of the wholesale dealer to pay the required tax for thirty days is made a misdemeanor and subjects such dealer upon conviction to a fine of not less than fifty nor more than one hundred dollars, each day after the expiration of the thirty days being deemed a separate offense, and, in addition, subjects him to a forfeiture of $25 for each day's delay in making the report required and paying the taxes imposed, while the only punishment prescribed against a wholesale dealer in other articles was a fine in any sum not less than the taxes due, and not more than double that sum and the cost of prosecution, the taxpayer in such case having the right to a dismissal of the prosecution on the payment of the tax and costs of prosecution and procuring the license to pursue or follow the occupation for the pursuing of which, without license, the prosecution was instituted; no prosecution to be commenced against any person after the procuring of said license, if the license procured covers the time actually followed in said occupation or calling. Penal Code, Art. 112.

. The transcript contains three principal assignments of error, one of which is that the state court should have held § 9 of the statute to be unconstitutional as laying a tax or burden on interstate commerce. It may be observed that no such defense was made by the company in its answer, and we need not stop to consider the question whether such a defense would have merit. Besides, the certificate made by the Supreme Court of Texas, at the request of the Oil Company, shows that the alleged invalidity of the statute was based entirely on the Fourteenth Amendment. Again, no point under the commerce clause is urged in the brief of the company. In this court it contends only that § 9 of the statute contravenes the Fourteenth Amendment. In our consideration of that proposition we assume, in conformity with the decision of the state court, that the statute is not in vio-

lation of any provision of the constitution or statute of Texas. That is a local question with which this court is not concerned on this writ of error. We are only concerned to inquire whether the statute is inconsistent with the Fourteenth Amendment, either as depriving the taxpayer of property without due process of law or as denying the equal protection of the laws.

Looking at the clause of the Amendment prohibiting the deprivation of property without due process of law, it is to be remembered that the provision to that effect appeared in most of the state constitutions long before the Amendment was adopted, and that principle was accepted everywhere as vital in the American systems of government. But the amendment, although negative in its words, had the effect to incorporate into the fundamental law of each State a rule theretofore prescribed by the Constitution of the United States for the General Government and its agencies. So that prior to the adoption of the Fourteenth Amendment the States were controlled, in imposing and collecting taxes, entirely by their own fundamental law, and if they departed from due process of law in matters involving the deprivation of property the taxpayer injuriously affected by its action could not, *for that reason,* prior to the Amendment, invoke for his or its protection any provision of the Constitution of the United States. But upon the adoption of the Fourteenth Amendment—whatever their own constitutions may then, or have subsequently, declared—the States became bound, as was the United States by the Fifth Amendment, not to deprive any person of property without due process of law. Still it was never contemplated, when the Amendment was adopted, to restrain or cripple the taxing power of the States, whatever the methods they devised for the purposes of taxation, unless those methods, by their necessary operation, were inconsistent with the fundamental principles embraced by the requirements of due process of law and the equal protection of the laws in respect of rights of property.

Can it be predicated of the statute of Texas that its pro-
visions for the imposition and collection of taxes is not con-
formable to due. process of law? We think not. The tax in
question is an occupation tax only. The statute has been so
construed by the state court, and the counsel for the Oil
Company accept that construction as. the law that should be
applied in this case. The tax was imposed by the legislature,
charged with the duty of providing the means necessary for
the support of the state government. That branch of the
state government alone could declare what taxes should be
imposed and upon whom or upon what kinds of business im-
posed. If the State seeks, directly by civil suit, or indirectly
by criminal prosecution in one of its courts, to enforce the
provisions of the statute, the way is open for the taxpayer,
in his defense,. to raise the question of the constitutional
validity either of the statute as a whole, or of any method
prescribed in.it for the collection of the tax. No element of
due process of law seems to be wanting unless it be, as con-
tended by the Oil Company, that the penalties prescribed for
failing to make the "reports" required by the statute are
so severe and exacting as to make it unsafe for the taxpayer
to question the validity of such penalties and thereby inter-
fere with or suspend the collection of the taxes by insisting
that they have been imposed in disregard of due process of
law. But this point, as to the severity and exacting charac-
ter of the penalties, need not be now considered, because no
penalties are claimed by the State in this action and no judg-
ment therefor was rendered. Besides, the provision as to
penalties is not so necessarily connected with the other parts
of the statute. as to vitiate the entire act, even if that pro-
vision should be held to be void. The right of the State, by
a civil suit, to recover the taxes imposed is wholly independ-
ent of its right, by suit or prosecution, to recover the pre-
scribed penalties. If the provisions as to penalties should
be stricken down, there will still be left a complete act pro-
viding for the collection by civil suit of the taxes due the

State. The rule is well settled that if one part of a statute is valid and another invalid the former may be enforced, if it be not so connected with or dependent on the other as to make it clear that the legislature would not have passed that part without the part that may be deemed invalid.

But it is contended that the statute contravenes the Fourteenth Amendment, in that it denies to the Oil Company the equal protection of the laws. This position is based mainly on the ground that the statute by imposing a tax on *wholesale* dealers in coal oil, naphtha, benzine, mineral oils refined from petroleum, and all other mineral oils, while omitting to put any such tax whatever on wholesale dealers in other articles of merchandise—such, for instance, as sugar, bacon, coal and iron—so discriminates against wholesale dealers in the several articles specified in § 9 as to deny them the equal protection of the laws. This view gives to the Amendment a scope that could not have been contemplated at the time of its adoption. The tax in question is conceded to be an occupation tax simply. It was imposed under the authority of the state constitution, providing that the legislature may "impose occupation taxes, both upon natural persons and occupations other than municipal, doing any business in this State, . . . except that persons engaged in mechanical and agricultural pursuits shall never be required to pay an occupation tax." It is not questioned that the State may classify occupations for purposes of taxation. In its discretion it may tax all, or it may tax one or some, taking care to accord to all *in the same class* equality of rights. The statute in respect of the particular class of wholesale dealers mentioned in it is to be referred to the governmental power of the State, in its discretion, to classify occupations for purposes of taxation. The State, keeping within the limits of its own fundamental law, can adopt any system of taxation or any classification that it deems best by it for the common good and the maintenance of its government, provided such classification be not in violation of the Fourteenth Amendment.

A leading case on the general subject is *Bell's Gap Rd. Co.* v. *Pennsylvania,* 134 U. S. 232, 237. In that case a question arose as to whether a statute of Pennsylvania, subjecting bonds and other securities issued by corporations, to a higher rate of taxation than was imposed on other moneyed securities, was a denial of the equal protection of the laws to corporations. This court held that there was no discrimination which the State was not competent to make, saying: "All corporate securities are subject to the same regulations. The provision in the Fourteenth Amendment, that no State shall deny to any person within its jurisdiction the equal protection of the laws, was not intended to prevent a State from adjusting its system of taxation in all proper and reasonable ways. It may, if it chooses, exempt certain classes of property from any taxation at all, such as churches, libraries and the property of charitable institutions. It may impose different specific taxes upon different trades and professions, and may vary the rates of excise upon various products; it may tax real estate and personal property in a different manner; it may tax visible property only, and not tax securities for payment of money; it may allow deductions for indebtedness, or not allow them. All such regulations, and those of like character, so long as they proceed within reasonable limits and general usages, are within the discretion of the state legislature, or the people of the State in framing their constitution. But clear and hostile discriminations against particular persons and classes, especially such as are of an unusual character, unknown to the practice of our governments, might be obnoxious to the constitutional prohibition. It would, however, be impracticable and unwise to attempt to lay down any general rule or definition on the subject, that would include all cases. They must be decided as they arise. We think that we are safe in saying, that the Fourteenth Amendment was not intended to compel the State to adopt an iron rule of equal taxation. If that were its proper construction, it would not only supersede all those constitutional provisions

and laws of some of the States, whose object is to secure equality of taxation, and which are usually accompanied with qualifications deemed material; but it would render nugatory those discriminations which the best interests of society require; which are necessary for the encouragement of needed and useful industries, and the discouragement of intemperance and vice; and which every State, in one form or another, deems it expedient to adopt."

In *Home Ins. Co.* v. *New York*, 134 U. S. 594, involving the constitutional validity of a law taxing corporate franchises and business, the court held that the statute was not a denial of the equal protection of laws. It said that the Amendment "does not prevent the classification of property for taxation—subjecting one kind of property to one rate of taxation, and another kind of property to a different rate—distinguishing between franchises, licenses and privileges, and visible and tangible property, and between real and personal property. Nor does the Amendment prohibit special legislation. Indeed, the greater part of all legislation is special, either in the extent to which it operates, or the objects sought to be obtained by it. And when such legislation applies to artificial bodies, it is not open to objection if all such bodies are treated alike under similar circumstances and conditions, in respect to the privileges conferred upon them and the liabilities to which they are subjected. Under the statute of New York all corporations, joint stock companies and associations of the same kind are subjected to the same tax. There is the same rule applicable to all under the same conditions in determining the rate of taxation. There is no discrimination in favor of one against another *of the same class.*"

So, in *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540, 562: "A tax may be imposed only upon certain callings and trades, for when the State exerts its power to tax, it is not bound to tax all pursuits or all property that may be legitimately taxed for governmental purposes. It would be an intolerable burden if a State could not tax any property or

calling unless, at the same time, it taxed all property or all callings. Its discretion in such matters is very great and should be exercised solely with reference to the general welfare as involved in the necessity of taxation for the support of the State. A State may in its wisdom classify property for purposes of taxation, and the exercise of its discretion is not to be questioned in a court of the United States, so long as the classification does not invade rights secured by the Constitution of the United States."

There are many other cases in which the court considered the meaning and scope of the constitutional guaranty of the equal protection of the laws. We will refer to a few of them.

In *Kentucky Railroad Tax Cases*, 115 U. S. 321, 337, the court sustained, as not inconsistent with the equal protection clause of the Fourteenth Amendment, a Kentucky statute providing for the assessment of railroad property for purposes of taxation in a mode different from that prescribed as to ordinary real estate, or as to the property of corporations chartered for other purposes, such as bridge, mining, street railway, manufacturing, gas and water companies. It said that "the rule of equality, in respect to the subject, only requires the same means and methods to be applied impartially to all the constituents of each class, so that the law shall operate equally and uniformly upon all persons in similar circumstances. There is no objection, therefore, to the discrimination made as between railroad companies and other corporations in the methods and instrumentalities by which the value of their property is ascertained." In *Magoun v. Illinois Trust & Savings Bank*, 170 U. S. 283, 294, which involved the constitutionality of an inheritance tax law, the court recognized the power of the State to "distinguish, select and classify objects of legislation," by laws which did not violate the settled usages and established practices of our Government. In *American Sugar Refining Co. v. Louisiana*, 179 U. S. 89, a state enactment, imposing a license tax on the business of refining sugar and molasses was held not

to be a denial of the equal protection of the laws, because of the exemption from such tax of planters and farmers who ground and refined their own sugar and molasses. In *W. W. Cargill Co.* v. *Minnesota*, 180 U. S. 452, a statute requiring a license to operate a warehouse for the receipt of grain, located upon the right of way of a railroad, but which did not require a license as to a similar warehouse not located on any right of way, was not a denial of the equal protection of the laws to the first-named class. In *Cook* v. *Marshall Co.*, 196 U. S. 268, which involved the validity of a cigarette tax law that made a distinction between jobbers and wholesale dealers in cigarettes, the court said: "There is a clear distinction in principle between persons engaged in selling cigarettes generally or at retail, and those engaged in selling by wholesale to customers without the State. They are two entirely distinct occupations. One sells at retail, and the other at wholesale, one to the public generally, and the other to a particular class; one within the State, the other without. From time out of mind it has been the custom of Congress to impose a special license tax upon wholesale dealers different from that imposed upon retail dealers. A like distinction is observed between brewers and rectifiers, wholesale and retail dealers in leaf tobacco and liquors, manufacturers of tobacco and manufacturers of cigars, as well as peddlers of tobacco. It may be difficult to distinguish these several classes in principle, but the power of Congress to make this discrimination has not, we believe, been questioned." In *Armour Packing Co.* v. *Lacy*, 200 U. S. 226, a state law, imposing a license tax on meat packing houses, did not deny the equal protection of the laws to persons or corporations engaged in such business, because a like tax was not imposed on persons engaged in the business of selling the products of such houses, or on those engaged in packing articles of food other than meat.

In our judgment, the objection that within the true meaning of the Fourteenth Amendment, the statute of Texas has the effect to deny to the Oil Company the equal protection

of the laws does not rest upon any solid basis. The statute
makes no distinction among such wholesale dealers as handle
*the particular articles specified in* § 9. .The State had the right
to classify such dealers separately from those who sold, by
wholesale, other articles than those mentioned in that section.
The statute puts the constituents *of each of those separate*
*classes* on the same plane of equality. It is not arbitrary leg-
islation, except in the sense that all legislation is arbitrary.
If it be within the power of the legislature to enact the stat-
ute, then arbitrariness cannot be predicated of it in a court
of law. And it cannot be held to be beyond legislative power
simply because of its classification of occupations. What.
were the special reasons or motives inducing the State to adopt
the classification of which the Oil Company complains, we do
not certainly know. Nor is it important that we should cer-
tainly know. · It may be that the main purpose of the State
was to encourage retail dealing in the particular articles men-
tioned in § 9. If the statute had its origin in such a view, we
do not perceive that this court can deny the power of the
State to proceed on that ground. We may repeat what was
said in *Delaware Railroad Tax Cases*, 18 Wall. 206, 231, that
"it is not for us to suggest in any case that a more equitable
mode of assessment or rate of taxation might be adopted than
the one prescribed by the legislature of the State; our only
concern is with the validity of the tax; all else lies beyond
the domain of our jurisdiction." But we will not speculate
as to the motives of the State, and will assume—the statute,
either upon its face or by its necessary operation, not sug-
gesting a contrary assumption—that the State has in good
faith sought, by its legislation, to protect or promote the in-
terests of its people. It is sufficient for the disposition of
this case to say that, except as restrained by its own con-
stitution or by the Constitution of the United States, the
State of Texas, by its Legislature, has full power to prescribe
any system of taxation which, in its judgment, is best or
necessary for its people and government; that, so far as the

power of the United States is concerned, the State has the right, by any rule it deems proper, to classify persons or businesses for the purposes of taxation, subject to the condition that such classification shall not be in violation of the Constitution of the United States; that the requirement by the State, that *all* wholesale dealers in *specified articles* shall pay a tax of a given amount on their occupation, without exacting a similar tax on the occupations of wholesale dealers in other articles, cannot, on the face of the statute or by reason of any facts within the judicial knowledge of the court, be held, within the meaning of the Fourteenth Amendment, to deprive the taxpayer of his property without due process of law or to deny him the equal protection of the laws; and that the Federal court cannot interfere with the enforcement of the statute simply because it may disapprove its terms, or question the wisdom of its enactment, or because it cannot be sure as to the precise reasons inducing the State to enact it.

For the reasons herein stated, the judgment is

*Affirmed.*