**SOVEREIGN CAMP, W. O. W. v. CASADOS et al.**

**SECURITY BENEFIT ASS'N v. SAME.**

**THE PRAETORIANS v. SAME.**

Nos. 2917, 2924, 2926.

District Court, D. New Mexico.

Jan. 13, 1938.

No. 2917:
Rainey T. Wells, O. S. Wells, and Earle R. Stiles, all of Omaha, Neb., and J. O. Seth, of Santa Fe, N. M., for plaintiff Sovereign Camp, W. O. W.

No. 2924:
Gilbert & Hamilton, of Santa Fe, N.M., and Arthur W. Fulton, of Chicago, Ill., for plaintiff Security Ben. Ass'n.

No. 2926:

J. W. Randall, of Dallas, Tex., and Wilson & Watson, of Santa Fe, N. M., for plaintiff The Praetorians.

Frank H. Patton, Atty. Gen., state of New Mexico, and Fred J. Federici and Richard E. Manson, Assts. Atty. Gen., state of New Mexico, for defendants.

Before BRATTON, Circuit Judge, and NEBLETT, and MURRAH, District Judges.

MURRAH, District Judge.

This is a bill in equity to permanently enjoin the enforcement of an amendment, Laws N.M.1937, c. 69, § 1, to section 30, chapter 105, Session Laws of New Mexico 1931, upon the grounds and for the reason that said amendment offends article 5 and section 1 of article 14, Amendments to the Constitution of the United States and section 18, article 2, of the Constitution of the state of New Mexico, commonly referred to as the due process and equal protection clauses of the Constitution of the United States and similar provisions of the State Constitution; section 11, article 2, of the Constitution of New Mexico in respect to the freedom of religious worship; section 26, article 4, of the Constitution of the state of New Mexico in respect to special privileges; and section 1, article 8, of the Constitution of the state of New Mexico relating to equality and uniformity of taxation.

The complainants further contend that under the provisions of the act, if valid, no taxes or assessments provided to be paid by the complainants under the terms of the act are due until March 1, 1938, because the act is prospective only and should not be given a retroactive or retrospective effect as is contended by the defendants and that any other construction would contravene section 10, article 1, of the Constitution of the United States or section 19, article 2, of the state of New Mexico because it would impair the obligation of contract.

The jurisdiction of this court is invoked under section 266 of the Judicial Code, as amended, 28 U.S.C.A. § 380, because of diversity of citizenship and the presence of a substantial federal question, plus the requisite amount in controversy, and because the complainant seeks to restrain state officers from enforcing the state statute upon the ground that the statute is unconstitutional.

The jurisdiction of this court to decide all issues raised in the bill of complaint is not disputed. This court sitting as a specially constituted court, under section 266, Judicial Code, as amended, 28 U.S.C.A. § 380, will take cognizance of all the issues raised in the bill of complaint. Modern Woodmen of America v. Casados, D. C., 15 F.Supp. 483; Sovereign Camp, W. O. W. v. Murphy, D. C., 17 F.Supp. 650; Siler v. Louisville & N. R. Co., 213 U.S. 175, 29 S. Ct. 451, 53 L.Ed. 753.

Subsequent to the filing of this case and the hearing on the same, Congress amended section 24 of the Judicial Code with respect to the jurisdiction of the District Court of the United States over suits relating to the collection of state taxes. Public—No. 332—75th Congress, Statutes 1551, 50 Stat. 738, 28 U.S.C.A. § 41(1), approved August 21, 1937. The act provides:

"Notwithstanding the foregoing provisions of this paragraph, no district court shall have jurisdiction of any suit to enjoin, suspend, or restrain the assessment, levy, or collection of any tax imposed by or pursuant to the laws of any State where a plain, speedy, and efficient remedy may be had at law or in equity in the courts of such State."

Section 2(b) of said act, 28 U.S.C.A. § 41(1a), (b), provides:

"The provisions of this Act shall not affect suits commenced in the district courts, either originally or by removal, prior to its passage; and all such suits shall be continued, proceedings therein had, appeals therein taken, and judgments therein rendered, in the same manner and with the same effect as if this Act had not been passed."

The act does not affect the jurisdiction of this court over the subject-matter of this suit and this case will be considered under the provisions of the law existing at the time the same was commenced and heard.

The legislation which the bill of complaint seeks to have declared unconstitutional and injunctive relief granted in respect thereto is chapter 69 of the New Mexico Session Laws of 1937, the pertinent parts of which follow:

"Section 1. That Section 30 of Chapter 105, New Mexico Session Laws of 1931 be and the same hereby is amended to read as follows:

"'Section 30. (Taxation) Except as hereinafter provided, every fraternal Benefit Society organized and licensed under this

Act, or doing business in the State of New Mexico, shall pay to the' Superintendent of Insurance the following taxes and fees. * * * and every such society shall also pay annually on or before the 1st day of March of each year, for the privilege of doing business in the State of New Mexico, two per cent. (2%) of the gross premiums collected by·it in New Mexico during the preceding calendar year, less all return premiums and premiums paid to insurance companies licensed to transact business in the State of New Mexico for re-insurance on New Mexico risks. * * *

"The failure to pay any taxes or fees imposed under the provisions of this Act shall render such companies liable to the state of New Mexico for the amount thereof and for the penalties now provided in Section 71-121, New Mexico Statutes Annotated, Compilation of 1929. * * *

"*Exceptions:* Every such society which (1) issues certificates or benefits strictly in accordance with Section 5, and (2) which limits its membership to members of. one religious faith, or to persons engaged in one or more hazardous occupations in the same or similar lines of business, and (3) which does not employ paid solicitors or salesmen either on a salary or commission basis for procuring new insurance or members, and (4) which does not solicit insurance applications from the general public, but limits its solicitation of insurance applications to persons who are members in good standing in such society, shall be exempt from the fees and taxes hereinbefore imposed, but shall pay the following fees. * * *

"All monies collected by the Superintendent of Insurance from fraternal benefit societies under the provisions of this Act shall be by him paid to the State Treasurer, and by the State Treasurer converted into the maintenance fund of the Carrie Tingley Hospital for Crippled Children, at Hot Springs, New Mexico."

The foregoing statute repealed all sections of chapter 105, Session Laws of 1931, in conflict therewith and declared an emergency. The act received executive approval and became a law on March 6, 1937.

The cases in the caption have been consolidated for the purposes of trial and decision of this court and the parties have filed a stipulation of the pertinent facts necessary for the determination of the legal issues raised by the bill in equity. A temporary injunction was entered by consent and this court is asked to permanently enjoin the enforcement of the foregoing act. The pertinent parts of the stipulation are as follows:

"That complainant does not limit its membership to members of one religious. faith, but accepts members and issues benefit certificates of insurance to persons of every religious faith and creed, as well as to those of no religious faith and creed, without discrimination; and does not limit its membership to persons engaged in one or more hazardous occupations in the same or similar lines of business; that complainant does solicit members from the general public, subject in all cases to such persons meeting the requirements of the constitution, laws and by-laws of the complainant; that substantially all members of complainant hold insurance certificates issued by complainant; that complainant does employ said solicitors, salesmen or organizers either on a salary or commission basis for procuring new insurance but such solicitors, salesmen, or organizers receive no salary or commission for soliciting membership; that complainant solicits insurance applications from persons who with their applications for insurance make application for membership in the society, and to persons who are members of the society; and it issues no certificates of insurance to any person who has not at the time of such issuance been duly constituted a member of such society in compliance with its constitution, laws and by-laws; and if for any reason a member's application for insurance is rejected, he can and does continue as a social member of the Society, and it is not necessary that any applicant make application for insurance in order to become a social member."·

"That the form of application used by Complainant combines in one instrument an application for membership and an application for insurance, and which application for membership in Complainant includes in the single instrument executed by the applicant, an application for insurance in Complainant, with the understanding that no insurance will be granted unless the applicant is accepted as a member of the Society, and unless he passes a satisfactory medical examination; and conversely, if the applicant is accepted for insurance and fails to pay his assessments for insurance when due, he becomes suspended and forfeits all of his rights as a social or beneficiary member in the society, except as other-

wise provided in the certificate or in the constitution and by-laws of the society."

It is agreed that the complainants comply with section 5 of chapter 105, Session Laws of New Mexico 1931. It is also admitted that certain foreign fraternal benefit societies licensed to do business in the state of New Mexico limit their membership to members of one religious faith or to persons engaged in one or more hazardous occupations in the same or similar lines of business and which do not employ paid solicitors or salesmen either on a salary or commission basis for procuring new insurance and which do not solicit insurance applications from the general public; that such foreign fraternal benefit societies have been exempt from the\ payment of fees and taxes provided by chapter 69 of the Session Laws of New Mexico of 1937 by order of the Corporation Commission and that societies so exempt pay no tax of any character, except fees provided to be paid in chapter 69, supra. That societies so exempt are the Knights of Columbus and the Electrical Works Benefit Association and that the form of insurance issued by these exempt societies is substantially the same as those issued by the complainants and for which substantially the same rates and assessments are collected.

It is also agreed that the complainant companies have been duly and regularly licensed to do business in the state of New Mexico under chapter 105 of the Session Laws of New Mexico 1931, and were authorized to do business under permit granted by the duly constituted authorities until April 1, 1937, but there is a controversy as to the effective date of the imposition of the tax provided by the statute imposing the same, supra.

We shall first determine the constitutional questions presented:

It is well to observe that prior to the enactment of chapter 69, Session Laws of New Mexico 1937, all fraternal benefit societies operated in the state of New Mexico under chapter 105, Session Laws of New Mexico 1931. The question of whether or not these companies classified as fraternal benefit societies were subject to the 2 per cent. gross production tax provided to be paid by other companies had been before the courts prior to the enactment of chapter 69, and a specially constituted court under section 28 U.S.C.A. § 380, decided this question in favor of the fraternal benefit societies on the grounds that chapter 105,

Session Laws of 1931, was a "Blue Print" by which said companies were licensed to do business in the state and were distinguishable by statute from other insurance companies and therefore exempt from the tax. Modern Woodmen of America v. Casados, D.C., 15 F.Supp. 483 and Id., D.C. 17 F.Supp. 763.

The next Legislature, having specifically in mind the taxation of this class of insurance companies on the same basis as other insurance companies doing business in the state, enacted chapter 69, Session Laws of New Mexico, 1937, so that under the existing law, as amended by chapter 69, supra, all insurance companies, except that class exempt under chapter 69, supra, were taxed on the same basis for the privilege of doing business in the state of New Mexico. The amending act or the taxing act granted certain exemptions which constitute the basis for the bill of complaint in which it is sought to have the act declared unconstitutional because violative of the due process and equal protection clauses of the Constitution of the United States and similar clauses of the Constitution of New Mexico, because the said exemptions create an arbitrary and capricious classification for the purposes of taxation not within the limits of the amendments to the State and Federal Constitution.

It is well now to consider the exemptions contained in chapter 69, supra, with the view of determining what classification is made for the purpose of determining its repugnance to the constitutional guarantees of the complainants. The exemption provides that any fraternal benefit society, in order to come within the exemptions provided in the act, chapter 69, supra, must first issue certificates or benefits strictly in accordance with section 5, Laws 1931, c. 105. The complainants complied with this requirement and it is not material to the issues.

The company must, second, limit its membership to members of one religious faith, or to persons engaged in one or more hazardous occupations in the same or similar lines of business. This exemption is in the alternative. Members of one religious faith or one or more hazardous occupations constitute two different classifications within the exemption.

Third, the company must not employ paid solicitors or salesmen either on a salary or commission basis for procuring new insurance or members.

Fourth, the company, to be exempt, must not solicit insurance applications from the general public, but limit its solicitation of insurance applications to persons who are in good standing in such society.

It is plain that the first, second, third, and fourth requirements are cumulative and before a company, seeking to do a fraternal insurance business in the state, may come within these exemptions, it must comply with all the provisions; that is to say, it must limit its membership to members of one religious faith or persons engaged in one or more hazardous occupations in the same or similar lines of business; it must not employ paid solicitors or salesmen either on a salary or commission basis for procuring new insurance or members. It must not solicit insurance applications from the general public, but limit its solicitation of insurance applications to persons who are in good standing in such society.

Thus did the Legislature of the state of New Mexico seek to create a classification for the purposes of taxation. The power of the Legislature to make and create classifications of businesses, trades, and occupations for the purposes of taxation has been the subject of much litigation since the enactment of the due process and equal protection clauses of the Constitution and as our system of taxation has become more and more complex with the necessity for raising additional taxes for the purposes of meeting the increasing demands of state government. The litigation before the federal courts has increased and with the increase of this litigation the courts have necessarily disagreed on the application of a given state of facts to the principle of law as it was originally announced and especially under the recent complicated plans and systems of taxation has our Supreme Court sharply divided on application of the broad and general principles governing the powers of the state Legislature to make classifications for the purposes of taxation. Much has been said by the Supreme Court as well as many of the inferior courts on the question of taxation and the abuse of power in respect to taxation.

In McCulloch v. Maryland, 4 Wheat. 316, 427, 428, 4 L.Ed. 579, Chief Justice Marshall said:

"The only security against the abuse of this power, is found in the structure of the government itself. In imposing a tax the legislature acts upon its constituents. This is in general a sufficient security against erroneous and oppressive taxation."

In the same opinion, Chief Justice Marshall uttered the famous expression:

"The power to tax involves the power to destroy."

In Citizens' Savings & Loan Association v. Topeka, 20 Wall. 655, 22 L.Ed. 455, that court said:

"Of all the powers conferred upon government that of taxation is most liable to abuse. Given a purpose or object for which taxation may be lawfully used and the extent of its exercise is in its very nature unlimited."

After these famous expressions, the Fourteenth Amendment to the Constitution was enacted. Its concepts were vitalized by the famous case of County of Santa Clara v. Southern Pac. Railroad Co., C.C., 18 F. 385, 399, in which the learned Justice Field said, in a most cogent expression:

"It is a matter of history that unequal and discriminating taxation, leveled against special classes, has been the fruitful means of oppressions, and the cause of more commotions and disturbance in society, of insurrections and revolutions, than any other cause in the world."

Justice Field in the same opinion stated:

"With the adoption of the [Fourteenth] amendment the power of the states to oppress any one under any pretense or in any form was forever ended; and henceforth all persons within their jurisdiction could claim equal protection under the laws. And by equal protection is meant equal security to every one in his private rights—in his right to life, to liberty, to property, and to the pursuit of happiness. It implies not only that the means which the laws afford for such security shall be equally accessible to him, but that no one shall be subject to any greater burdens or charges than such as are imposed upon all others under like circumstances. * * * Unequal taxation, so far as it can be prevented, is, therefore, with other unequal burdens, prohibited by the amendment. There undoubtedly are, and always will be, more or less inequalities in the operation of all general legislation arising from the different conditions of persons from their means, business, or position in life, against which no foresight can guard. But this is a very different thing, both in purpose and effect, from a carefully devised scheme to produce

such inequality; or a scheme, if not so devised, necessarily producing that result. Absolute equality may not be attainable, but gross and designed departures from it will necessarily bring the legislation authorizing it within the prohibition."

Thus the court erected in cogent terms a safeguard against inequality in taxation and announced the doctrine of uniformity in taxation and the protective provision of the Fourteenth Amendment was definitely extended into the field of taxation. It was, also, recognized in this memorable pronouncement that the Legislature may, within its discretion, determine freely what occupations or classes of property or persons are to be taxed; provided that out of the general mass of property, or general citizen body, particular pieces of property or particular individuals are selected to bear the burden of the tax, and, when a tax is laid upon certain classes of property or persons, there must be some reasonable basis for the classifications adopted.

Willoughby in his work on the Constitution of the United States, Vol. 3, page 1948, recognized the opinion of Justice Field as establishing the above principle.

In Bell's Gap Railroad Co. v. Pennsylvania, 134 U.S. 232, 10 S.Ct. 533, 535, 33 L. Ed. 892, was involved the validity of a state law which levied a certain tax on all moneyed securities according to their actual value, except that, as to all bonds and other securities issued by corporations, their nominal or par value should be the basis. It was therein argued that this violated the requirement of the Fourteenth Amendment as to the equal protection of the law. Here the power of the state Legislature to make classifications and discriminations for purposes of taxation was upheld and pointed the way which courts have attempted to follow. The court said in upholding the power of the Legislature to impose the tax: "All corporate securities are subject to the same regulation. The provision in the Fourteenth amendment, that no state shall deny to any person within its jurisdiction the equal protection of the laws, was not intended to prevent a state from adjusting its system of taxation in all proper and reasonable ways. . It may, if it chooses, exempt certain classes of property from any taxation at all, such as churches, libraries, and the property of charitable institutions. It may impose different specific taxes upon different trades and professions, and may vary the rates of excise upon various prod-

ucts; it may tax real estate and personal property in a different manner; it may tax visible property only, and not tax securities for payment of money; it may allow deductions for indebtedness, or not allow them. All such regulations, and those of like character, so long as they proceed within reasonable limits and general usage, are within the discretion of the state legislature, or the people of the state in framing their constitution," and here again it is significant to note that this same court stated further: "It would, however, be impracticable and unwise to attempt to lay down any general rule or definition on the subject that would include all cases. They must be decided as they arise. We think that we are safe in saying that the fourteenth amendment was not intended to compel the states to adopt an iron rule of equal taxation."

Thus the court in adhering to the doctrine as announced by Justice Field recognized the inapplicability of any general rule or definition.

In American Sugar Refining Co. v. Louisiana, 179 U.S. 89, 21 S.Ct. 43, 44, 45 L.Ed. 102, decided November 5, 1900, the Supreme Court had before it a question similar in many respects to the case now under consideration. It was held there that the equal protection clause of the Constitution was not violated by a license tax imposed upon manufactures of sugar, but exempting from its operation those who refined the products of their own plantations. The opinion therein stated:

"The act in question does undoubtedly discriminate in favor of a certain class of refiners, but this discrimination, if founded upon a reasonable distinction in principle, is valid. * * *

"The Constitution of Louisiana classifies the refiners of sugar for the purpose of taxation into those who refine the products of their own plantations, and those who engage in a general refining business, and refine sugars purchased by themselves or put in their hands by others for that purpose, imposing a tax only upon the latter class. To entitle a party to the exemption it must appear (1) that he is a farmer or a planter; (2) that he grinds the cane as well as refines the sugar and molasses; (3) that he refines his own sugar and molasses, meaning thereby the product of his own plantation. * * * The discrimination is obviously intended as an encouragement to agriculture, and does not deny to persons

and corporations engaged in a general refining business the equal protection of the laws."

Thus we see that the Supreme Court upheld the power of the Legislature to classify for taxation purposes by the process of exemption.

The above cases, supra, were cited with approval and the rule upheld in Citizens' Telephone Company v. Fuller, 229 U.S. 322, 324, 33 S.Ct. 833, 57 L.Ed. 1206, wherein the court said:

"Exempting the property of telephone companies whose gross receipts for the year do not exceed $500 from the ad valorem tax imposed * * * does not render the statute invalid under U.S.Const., 14th Amend., as denying the equal protection of the laws, where, under the classification made by the statute, the companies taxed are mainly those organized for profit, while the untaxed enterprises are mainly not profit making, but mutual or co-operative."

The court in the body of the opinion went on to say:

"It may therefore be said that in taxation there is a broader power of classification than in some other exercises of legislation. There is certainly as great a power, and the rule appellant urges cannot be adopted. It is inconsistent with the principle of classification and the cases which have explained the principle and the range of its legal exercise."

The Supreme Court had a similar question before it in the case of Southwestern Oil Co. v. Texas, 217 U.S. 114, 30 S.Ct. 496, 54 L.Ed. 688, wherein it was held that wholesale dealers in oil were not denied equal protection by an occupation tax which was not exacted of wholesale dealers in such other articles of merchandise as sugar, bacon, coal, iron, etc.

In the case of Alaska Fish Salting & By-Products Co. v. Smith, 255 U.S. 44, 41 S.Ct. 219, 220, 65 L.Ed. 489, Justice Holmes, in the body of the opinion, states:

"The legislature was warranted in treating the making of oil and fertilizer from herring as a different class of subjects from the making of the same from salmon offal. The provisions against taxing in excess of one per centum of the assessed valuation of property does not apply to a license tax like this. This is not a property tax."

The complainants cite and rely upon Louisville Gas & Electric Co. v. Coleman, 277 U.S. 32, 48 S.Ct. 423, 425, 72 L.Ed. 770, wherein the equal protection clause of the Fourteenth Amendment was held to have been violated by a state tax on the recording of mortgages and which exempted from its application mortgages maturing within five years. Justice Sutherland speaking for the court stated:

"The application of the equal protection clause does not depend upon what name is given to the tax. Whether the tax now in question be called a privilege tax or a property tax, it falls in effect upon one indebtedness and not upon another where the sum of each is the same; where both are incurred by corporations or both by natural persons; where the percentage of interest to be paid is the same; where the mortgage security is identical in all respects; where, in short, the only difference well may be that one is payable in 60 months, and the other in 59 months."

The court also said:

"The equal protection clause, like the due process of law clause, is not susceptible of exact delimitation. No definite rule in respect of either, which automatically will solve the question in specific instances, can be formulated. Certain general principles, however, have been established, in the light of which the cases as they arise are to be considered. In the first place, it may be said generally that the equal protection clause means that the rights of all persons must rest upon the same rule under similar circumstances."

The court further said:

"It does not, however, forbid classification; and the power of the state to classify for purposes of taxation is of wide range and flexibility provided always that the classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.'"

This opinion was by a divided court; Justice Holmes, Justice Brandeis, Justice Sanford, and Justice Stone dissented from the opinion and Justice Brandeis delivered an exhaustive dissenting opinion concurred in by Justice Holmes and Justice Stone, in which all cases which we have heretofore treated herein were cited as authority for the power of the Legislature to make the classification which the majority opinion held repugnant to the equal protection clause of the Constitution, Louisville Gas

& Electric Co. v. Coleman, 277 U.S. 32, 42, 48 S.Ct. 423, 426, 72 L.Ed. 770, supra.

The State Board of Tax Commissioners v. Jackson, 283 U.S. 527, 51 S.Ct. 540, 75 L.Ed. 1248, 73 A.L.R. 1464, 75 A.L.R. 1536, is a leading case on the subject of classification for purposes of taxation and involved the power of the Legislature to enact legislation imposing a license fee or tax on general stores which increases progressively with the number of stores under the same general management, supervision, or ownership, so that in that case the owner of a chain of some 225 stores selling groceries was obliged to pay $5,443; the owner of a similar store, though it involved a much greater investment and income, would pay but $3. The power of the Legislature to make such classification was challenged by similar procedure to that employed herein. It was therein contended that the statute imposing the said license tax was repugnant to the equal protection clause of the Fourteenth Amendment, article 1, section 23, of the Indiana Constitution and article 10 and section 1, which state constitutional provisions are quite similar to the provisions of the New Mexico Constitution invoked in this case.

A specially constituted court, pursuant to U.S.C.A. title 28, § 380, perpetually enjoined the state from enforcing the act.

In Jackson v. State Board of Tax Commissioners, D.C., 38 F.2d 652, 658, the court recognizing and citing as authority on the subject all the authorities herein cited, and recognizing the power of the Legislature to classify for purposes of taxation and stating that they were not concerned with the motive of the Legislature and that no general rule could be laid down for determining the question, except that the Legislature may classify property and occupations for purposes of raising revenue and may select some property or occupation for taxation and omit others so long as such classification is reasonable and not arbitrary. Yet the court below held:

"All persons engaged in the operation of one or more stores or mercantile establishments within the. state of Indiana belong to the same class, for occupational tax purposes, * * * and should pay the same license fee, regardless of the number of stores owned and operated by them. Any other classification is arbitrary and is in violation of the constitutional rights."

The court in the body of the opinion stated:

"Such classification, if. enforced, will deny the owner of more than one store of the equal protection of the law, as guaranteed by the Constitution of the United States, and will deprive him of his rights under the Constitution of the State of Indiana. Such classification is not reasonable, and, as stated by the Supreme Court of the United States in Louisville Gas & Electric Co. v. Coleman, Auditor, supra, does not 'rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' It is arbitrary, and the act in question is void and in violation of both the Constitution of the United States and of the State of Indiana."

The Supreme Court in its opinion delivered by Justice Roberts reversed the judgment of the lower court and stated as follows:

"As applied to the fundamental state power of taxation, the equal protection clause does not compel the adoption of an iron rule of equal taxation, nor prevent variety or differences in taxation, or discretion in the selection of subjects, or the classification for taxation of properties, businesses, trades, callings, or occupations. * * * The principles which govern the decision of this cause are well settled. The power of taxation is fundamental to the very existence of the government of the States." The court cited "Bell's Gap Railroad Co. v.·Pennsylvania, 134 U.S. 232, 10 S.Ct. 533, 33 L.Ed. 892; Southwestern Oil Co. v. Texas, 217 U.S. 114, 30 S.Ct. 496, 54 L.Ed. 688; Brown-Forman Co. v. Kentucky, 217 U.S. 563, 30 S.Ct. 578, 54 L.Ed. 883."

The court further said: "The fact that a statute discriminates in favor of a certain class does not make it arbitrary, if the discrimination is founded upon a reasonable distinction." Citing "American Sugar Refining Co. v. Louisiana, 179 U.S. 89, 21 S.Ct. 43, 45 L.Ed. 102," "or if any state of facts reasonably can be conceived to sustain it."

The court quoting from Brown-Forman Co. v. Kentucky, supra, went on to say: "It is not the function of this Court in cases like the present to consider the propriety or justness of the tax, to seek for the motives, or to criticize the public policy which prompted the adoption of the legislation. Our duty is to sustain the classification adopted by the Legislature if there are substantial differences between the occupations separately classified. Such differences need

not be great. The past decisions of the Court make this abundantly clear."

The court cited American Sugar Refining Co. v. Louisiana, supra; Cargill Co. v. Minnesota, 180 U.S. 452, 21 S.Ct. 423, 45 L.Ed 619; Armour Packing Co. v. Lacy, 200 U.S. 226, 26 S.Ct. 232, 50 L.Ed. 451; Quong Wing v. Kirkendall, 223 U.S. 59, 32 S.Ct. 192, 56 L.Ed. 350, and Bradley v. Richmond, 227 U.S. 477, 33 S.Ct. 318, 57 L.Ed. 603, and many other cases. Justice Sutherland dissented from this opinion, citing Louisville Gas & Electric Co. v. Coleman, supra; Bell's Gap Railroad Co. v. Pennsylvania, supra; County of Santa Clara v. Southern Pac. R. Co. supra and Quaker City Cab Co. v. Pennsylvania, 277 U.S. 389, 48 S.Ct. 553, 72 L.Ed. 927, and three of the learned Justices concurred in Justice Sutherland's dissenting opinion in which it was urged that the judgment of the lower court should have been affirmed.

In Borden's Farm Products Co., Inc. v. Baldwin, Commissioner of Agriculture and Markets of New York, 293 U.S. 194, 55 S. Ct. 187, 79 L.Ed. 281, Chief Justice Hughes delivered the opinion of the court and in the second syllabus stated:

"When a classification made by the legislature is called in question, if any state of facts reasonably can be conceived that would sustain it, there is a presumption of the existence of that state of facts, and he who assails the classification must carry the burden of showing by a resort to common knowledge or other matters which may be judicially noticed, or to other legitimate proof, that the action is arbitrary."

In Aero Mayflower Transit Co. v. Georgia Public Service Commission, 295 U.S. 285, 55 S.Ct. 709, 712, 79 L.Ed. 1439, it is said by Justice Cardozo:

"A State Legislature has a wide discretion in the classification of trades and occupations for the purpose of taxation and in the allowance of exemptions and deductions within reasonable limits."

This case cites with approval American Sugar Refining Co. v. Louisiana, supra; Bell's Gap Railroad Co. v. Pennsylvania supra; Southwestern Oil Co. v. Texas, supra; Brown-Forman Co. v. Kentucky, supra; State Board of Tax Commissioners v. Jackson, supra, and many other cases.

All the above-cited cases were, also, cited with approval in another opinion by Justice Cardozo in the case of Fox v. Standard Oil Company of New Jersey, 294 U.S. 87, 55 S.Ct. 333, 79 L.Ed. 780, decided January 14, 1935. This case held that the taxing statute in question did not violate section 1 of article 10 of the West Virginia Constitution, which requires that taxation shall be equal and uniform throughout the state. It is also significant to note that the Supreme Court reversed a decision of the lower court which held tax statute unconstitutional. D.C., 6 F.Supp. 494. It should be noted that this opinion was by divided court in which the minority were of the opinion that the judgment of the lower court should have been affirmed.

In Colgate v. Harvey, State Tax Commissioner, 296 U.S. 404, 56 S.Ct. 252, 80 L. Ed. 299, 102 A.L.R. 54, the Supreme Court held valid a Vermont statute which levied a general income tax of 4 per cent. upon the dividends received by residents from corporations, exempts dividends from corporation business done in the state, measuring the exemption by the ratio of the net income of the corporation earned within the state to its entire net income. The court said:

"Absolute equality in taxation is not required by the Fourteenth Amendment; the boundary between permissible and forbidden inequalities depends upon the material circumstances in each case," and again the court divided upon the constitutional limitations of the tax imposed. Both the majority and minority opinions quoted all the cases which we have heretofore cited with equal force in support of the majority as well as the minority opinions.

A review of all the decisions on the question of equality and uniformity in taxation brings us to the conclusion that although the courts well agree upon the abstract principle of law, as announced in the original cases, there is wide and varied differences of opinion respecting the application of these rules in particular cases.

In consideration of this case, we must concede to the Legislature the power to classify for purposes of taxation and to impose the tax in question if any reasonable or sound basis can be found to sustain it. That is to say, that the legal presumption is in its favor and if the statute on its face and within its four corners can square with the rule of reasonableness, it is the duty of this court to sustain it, aside from what we may individually conceive to be the wisdom of the act or the collateral purposes which may have prompted the classification.

■ If the state of Louisiana may impose a processing tax on the refining of sugar and molasses and exempt farmers who process their own sugar and that of others during rolling mill time within the limits prescribed by the Fourteenth Amendment (American Sugar Refining Co. v. Louisiana, supra), and if the state of Indiana can levy a license tax on persons, co-operative or otherwise, for operating more than one store and exempting those who sell the same merchandise under many different departments because they are sold under one roof (State Board of Tax Commissioners v. Jackson, supra), can the state of New Mexico impose a tax for the privilege of doing business in the state of New Mexico on fraternal benefit societies and exempt certain other societies selling the same form and kind of insurance, at substantially the same rate, so long as such societies limit their business to members of one religious faith or members of one or more hazardous occupations in the same or similar lines of business and which do not employ paid solicitors or salesmen either on a salary or commission basis for procuring new insurance or members and so long as it does not solicit insurance applications from the general public but limits its solicitations of insurance applications to persons who are members in good standing in such society. It is conceded that these requirements are cumulative and that a compliance with all is necessary to exemption under the law.

The question remains, Do the methods employed by societies operating under the exemption provision constitute a different class and do such business methods, as prescribed, constitute a reasonable basis for classification for taxation purposes? It has been urged by the defendants that the purpose of the Legislature in making such classification was to classify societies whose purposes were predominately commercial or whose existence was justified for the purpose of engaging in the insurance business from those societies, the predominant purpose of which is to promote fraternal brotherhood and which writes insurance as a benevolent and incidental part of its fraternal existence. It has, also, been suggested that the Legislature intended to foster fraternal societies, religious orders, and to encourage members of one religious faith to create a system of social security for its members.

Whether either or both of the suggested purposes or motives of the Legislature

are correct we cannot say, nor is it within our province to determine under the decisions of our court. Suffice it to say that these are some of the motives and purposes which might constitute a reasonable basis for the classification made, and if they are, this court is not at liberty to question the motives, purposes, or the wisdom of the Legislature in making such classification, but under the doctrines announced in the foregoing cases, it is our duty to sustain the same.

Much has been said regarding the distinction between this tax, which is a privilege tax and an ad valorem tax. It is significant to note that in the earlier cases in which this question was raised the principal source of revenue from taxation was by the levying of ad valorem taxes. As our system of taxation has become more complex, the levying of franchise license and privilege taxes have come within the scrutiny of the courts and we are unable to find wherein a noteworthy distinction has been made between an ad valorem levy and a privilege or license tax so long as the same is intended to produce revenue for the purpose of supporting the government. Louisville Gas & Electric Co. v. Coleman, supra.

We, therefore, conclude that the same rule applies in this case. We conclude that the classification made by the Legislature within its discretion rests on a reasonable basis, is not arbitrary, and within the limits of the Fifth and Fourteenth Amendments of the Constitution of the United States.

It not having been made to appear that article 2, section 18; article 4, section 26; article 8, section 1, granted to the citizens of New Mexico any greater guarantees than amendment 5, and section 1 of amendment 14 of the Constitution of the United States, the court concludes that the statute is within the limits of the foregoing provisions of the State Constitution. State Board of Tax Commissioners v. Jackson, supra and Fox v. Standard Oil Co. of New Jersey, supra.

■ In respect to article 1, section 1, of the Constitution of the United States, and article 2 of section 2 of the state of New Mexico and the contention that the statute in question contravenes the guarantees in respect to religious worship is without merit. Suffice it to say in this connection that it is not denied that the members of any religious faith or order could organize and perpetuate a society in the state of New Mexico and so long as they did not employ

paid solicitors or solicit insurance from the general public and confine their insurance applications to members in good standing in the society they would be entitled to the same exemptions on the same basis as members of any other religious faith. The complainants' contentions in this connection are utterly without merit.

■ Having determined the validity of the tax, we shall now determine the effective date of the same. Clearly this is a tax imposed for the privilege of doing business within the state of New Mexico. Payment of the tax is a condition precedent to the issuance of a license by the proper authorities upon compliance with the laws of the state. The well-settled rule indulges in the presumption that a statute shall have a prospective operation only, unless its terms show clearly a legislative intent that it should operate retrospectively or retroactively. DuLaney, Insurance Commissioner v. Continental Life Insurance Company, 185 Ark. 517, 47 S.W.2d 1082; Gallegos v. Atchison, T. & S. F. R. Co., 28 N.M. 472, 214 P. 579.

■ Whether a statute shall be given a retrospective or prospective effect is a matter of legislative intent. Silurian Oil Co. v. Essley, 10 Cir., 54 F.2d 43, at page 47, Lamb v. Powder River Live Stock Company, 8 Cir., 132 F. 434, 67 L.R.A. 558.

Legislative intent not otherwise expressed will be determined from the entire act and legislative history. Dulaney v. Continental Life Insurance Co., supra; Stockyards Loan Co. v. Nichols, 8 Cir., 243 F. 511; United States v. Board of Commissioners of Osage County, C.C., 193 F. 485.

■ A review of chapter 105, Session Laws of New Mexico 1931, and the legislative history of chapter 69, Session Laws of New Mexico 1937, which amends section 30, chapter 105, Session Laws of New Mexico 1931, leads us to the conclusion that it was the intent of the Legislature that the act should be effective and the tax computed on the basis of the gross premiums collected by the respective companies during the preceding year, to wit, 1936, as a condition precedent to the issuance of license on April 1, 1937, to do business during the ensuing year. The act became a law on March 6, 1937. The tax is provided to be paid on March 1, 1937. Complainants had no license to do business in the state of New Mexico after April 1, 1937, and although chapter 69, Session Laws of New Mexico is a tax-

ing act, it is amendatory to chapter 105, supra, under which the complainants have been licensed to do business in the state of New Mexico since its enactment and they had no greater right to do business in the state of New Mexico than that granted to them by the provisions of chapter 105, Session Laws of New Mexico 1931, as amended by chapter 69, supra.

We, therefore, conclude that the tax paying date is immaterial. The date on which the license is renewed or granted is controlling, which is April 1, 1937. Chapter 69, supra, was the law of the state of New Mexico at that time and the complainants are required to comply with the provisions of chapter 105, Session Laws of New Mexico 1931, as amended by chapter 69 of the Session Laws of New Mexico 1937, as a condition precedent to the renewal or the granting of license, which expires on April 1, 1937.

■ The statute does not violate section 10 of article 1 of the Constitution of the United States or section 19, article 2 of the Constitution of the state of New Mexico. A privilege or license to do business in a state is not a contract within the meaning of the above sections and does not vest in the holder thereof the right to enforce the same under such constitutional guarantees. Metropolitan Excise Board v. Barrie, 34 N.Y. 657; Burgess v. Brockton, 235 Mass. 95, 126 N.E. 456; Laing v. Americus, 86 Ga. 756, 13 S.E. 107; Littleton v. Burgess, 14 Wyo. 173, 82 P. 864, 2 L.R.A.,N.S., 631.

The bill should be dismissed and relief denied and decree will enter in accordance with the views herein expressed.

NEBLETT, District Judge (dissenting).

I cannot agree with the majority of the court in the foregoing opinion, holding that chapter 69, New Mexico Session Laws of 1937, sought to be declared unconstitutional by the complainants in these actions is constitutional. Said chapter 69, New Mexico Session Laws of 1937, by exempting fraternal benefit societies from taxation, if the society complies with all the provisions contained in the exception part of the act, while other fraternal benefit societies who do the same kind of insurance business and receive substantially the same rates must pay the tax imposed.

I am of the opinion the classification made by the act for the purpose of excepting from taxation certain fraternal benefit

societies, if they are within the provisions of the exception clause of the act, is not a reasonable classification and does not rest upon any sound ground of difference having a fair and substantial relation to the subject of the legislation.

I think chapter 69, New Mexico Session Laws of 1937, violates the provisions of the Fourteenth Amendment of the Constitution of the United States, which provides no state shall deny to any person within its jurisdiction the equal protection of the law.

I therefore dissent from the majority holding.