MODERN WOODMEN OF AMERICA v.
CASADOS et al.

No. 2829.

District Court, D. New Mexico.

July 1, 1936.

Nelson C. Pratt, of Omaha, Neb., James A. Marsh, of Denver, Colo., and J. O. Seth, of Santa Fe, N. Mex., for complainant..

Frank H. Patton, Atty. Gen., C. R. McIntosh, Sp. Asst. Atty. Gen., Creekmore Wallace, of Oklahoma City, Okl., and John M. Wheeler, of Tulsa, Okl., for defendants.

Before PHILLIPS and McDERMOTT, Circuit Judges, and NEBLETT, District Judge.

McDERMOTT, Circuit Judge.

This cause is submitted for final decree upon motion to dismiss the bill of complaint, the defendants announcing that they do not desire to answer over if the motion is overruled. The underlying questions are (1) whether plaintiff is subject to the two per cent. tax on gross premiums and other fees assessed against insurance companies, and (2) if so, whether the statute imposing such tax is in conflict with the Fourteenth Amendment to the Federal Constitution. Jurisdiction exists because of diversity of citizenship and the presence of a substantial federal question, plus the requisite amount in controversy. A three-judge court has been assembled because the bill seeks to restrain state officers from enforcing a state statute upon the ground that the statute is unconstitutional. 28 U.S.C.A. § 380.

Since 1905 the New Mexico statutes have classified fraternal societies and insurance companies. Section 11, chapter 5, Laws of 1905, imposed a two per cent. gross premium tax upon all insurance companies doing business in the territory, but section 25 of that act provided that its provisions should not apply to fraternal societies. Chapter 71, Comp.St.N.M.1929, is entitled "Insurance" and is divided into five articles. The first article deals with ordinary insurance companies and the third article with fraternal societies. The taxes which defendants threaten now to collect are imposed in the first article. Section 71-127. Section 71-121 imposes a penalty of not more than $500.00 a month for failure to pay taxes after demand. Section 71-171 makes it the duty of the Superintendent of Insurance to cancel the license of any company which is willfully not complying with the laws of the state. Section 71-109 authorizes the Superintendent to invoke the aid of any court through any appropriate process to enforce any order made by him in pursuance of law.

This first article—generally called the "Insurance Code (Comp.St.N.M.1929, § 71-101 to 71-176)"—was enacted in 1925 and did not repeal the Fraternal Society Code passed in 1921, now found in the

third article (section 71-301 et seq.). Vigil v. American Insurance Union, 37 N.M. 44, 17 P.(2d) 936.

The Fraternal Society Code defines such societies as organizations without capital stock, carried on not for profit, and which have a lodge system with ritualistic form of work and representative form of government. Section 71-301, Id. Sections 71-302 and 71-303 more particularly define "lodge system" and "representative form of government." Section 71-304 provides:

"Except as herein provided such societies shall be governed by this act, and shall be exempt from all provisions of the insurance laws of this state, not only in governmental relations with the state, but for every other purpose, and no law hereafter enacted shall apply to them, unless they be expressly designated therein."

Section 71-331 exempts all the funds of such societies from all taxes except on real estate and office equipment. Nominal fees are provided for annual licenses or renewals. Section 71-316. The types of insurance protection which may be granted are defined, investments of funds are regulated, examinations by state authority, issuance, renewal and revocation of licenses are provided for.

In 1935 the state authorities employed one C. R. McIntosh as a Special Attorney General, to collect from plaintiff the fees and taxes imposed under the general insurance code for each year from 1910 down to date—a sum in excess of $25,000.-00. In the effort to collect such taxes, defendants threatened to sue therefor, and in addition to revoke or refuse to renew plaintiff's license to do business, to throw it into receivership, to inflict penalties which may amount to $5,000.00 a month, and to pursue a policy of expensive examinations. Thereupon this suit was brought.

The bill is tediously prolix. In its 51 pages is a narrative of the history of the order and its benefactions, an abstract of litigation in Illinois, and a recital of the various contracts it has issued in the past. While it might well be stricken under Equity Rule 25, 28 U.S.C.A. following section 723, as defendants urge, that would only delay the outcome. It is alleged therein that plaintiff has done business in New Mexico since 1908, and has built up a large good will and established business in the state which would be destroyed if defendants revoked or refused to renew its license. The allegations are sufficient to bring plaintiff within the doctrine of Hanover Insurance Company v. Harding, 272 U.S. 494, 47 S.Ct. 179, 71 L.Ed. 372, 49 A. L.R. 713. It alleges, both flatly and in great circumstantial detail, that it is a fraternal society as defined by the New Mexico statutes. It alleges that the administrative officers of the state have, with full knowledge of its form of organization and the character of its business, treated it as a fraternal society for nearly thirty years; and that the Supreme Court of Illinois, the state of its nativity, has held it is a fraternal society.

We have checked the allegations of the bill as to plaintiff's form of government and the insurance it writes against the provisions of the New Mexico fraternal society code. Without burdening this opinion with the detail, it is enough to say that the bill alleges that plaintiff is a fraternal society as defined by the New Mexico statute. Upon argument, it was suggested that, notwithstanding the allegations of the bill, plaintiff is no longer a real fraternal society but is in fact an insurance company in masquerade; but such does not appear from the bill, and we must take its allegations as true. If it is a fraternal society as defined by the New Mexico statute, clearly it is not subject to the tax sought to be collected.

The argument and briefs deal at length with the question whether the two per cent. tax, if applicable to plaintiff, is constitutional. It is said that the reason why defendants have not stayed this suit as authorized by 28 U.S.C.A. § 380, is because the parties desire this court, and the Supreme Court on appeal, to decide the constitutional question promptly; that such procedure is quicker than to go to the Supreme Court via the state courts. The hope is respectfully expressed that this court will not "side-step" the constitutional question.

In short, we are asked to pass upon the constitutionality of a statute which does not apply to plaintiff. This we cannot do. Courts do not rule upon abstract questions, and we do not, and cannot with propriety, reach the constitutional question until it is first determined that the statute applies to plaintiff. A suitor cannot successfully come into court, state that while a statute does not affect him, he is curious to know whether it is constitutional. Southern Railway Co. v. King, 217 U.S. 524, 30 S.Ct. 594, 54 L.Ed. 868; Mal-

linckrodt Chemical Works v. State of Missouri ex rel. Jones, 238 U.S. 41, 35 S.Ct. 671, 59 L.Ed. 1192; Aikins v. Kingsbury, 247 U.S. 484, 38 S.Ct. 558, 62 L.Ed. 1226; Massachusetts v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078; Columbus & G. Ry. Co.·v. Miller, 283 U.S. 96, 51 S.Ct. 392, 75 L.Ed. 861.

 It is then said that, unless the statute is unconstitutional, a federal court is without jurisdiction to enjoin state officers in their efforts to collect taxes. The jurisdiction of the federal court rests on diversity of citizenship, the presence of a substantial federal question, and the requisite amount in controversy. The jurisdiction of the three-judge court rests on a substantial claim that the statute, if applicable, is unconstitutional. That it is determined, after final submission and upon consideration of the briefs and argument, that the statute does not apply, and the constitutional question otherwise presented should not therefore be ruled, does not oust the three-judge court of jurisdiction. It is suggested that the three-judge court should dissolve when it determines the constitutional question need not be decided. Such suggested procedure would result in interminable delay and confusion. The case would then go to the single judge who might construe the statute differently from his associates, thus reaching the constitutional question; then he must assemble the three-judge court again, for a single judge cannot issue the injunction on constitutional grounds. The three-judge court, adhering to its original views, would again dissolve. Or, on appeal from a single judge's holding that the statute did not apply, the Circuit Court of Appeals might find the statute did apply, in which event the case would go back for a three-judge court. A stalemate might easily result which would at least interminably delay final decision. Jurisdiction of a three-judge court, as in other cases, must be determined by the facts well pleaded in the bill; it cannot depend upon the decision eventually reached. Jurisdiction so existing, a three-judge court, like other courts, will decide the controversy on the ground it deems to be correct, state or federal; the law does not demand that any case be tried piecemeal. Siler v. Louisville & Nashville R. R. Co., 213 U.S. 175, 29 S.Ct. 451, 53 L.Ed. 753; Louisville & N. R. R. Co. v. Garrett, 231 U.S. 298, 34 S.Ct. 48, 58 L.Ed. 229; Van Dyke v. Geary, 244 U.

S. 39, 37 S.Ct. 483, 61 L.Ed. 973; Sterling v. Constantin, 287 U.S. 378, 53 S.Ct. 190, 77 L.Ed. 375.

 Is there an adequate remedy at law? Defendants do not assert that plaintiff might pay the tax and then sue the state to recover the taxes · paid and interest. Matthews· v. Rodgers, 284 U.S. 521, 52 S. Ct. 217, 76 L.Ed. 447. We have been cited to no statute authorizing the state to be sued for such a purpose. It is suggested that plaintiff has an adequate remedy at law by defending the action which defendants have threatened to bring to recover the taxes. If the only threat pleaded were a single action at law to recover the taxes, we would dismiss the bill for want of equity. But the bill further alleges that defendants will do plaintiff irreparable injury pending a decision in the state courts by revoking or refusing to renew its license which it has enjoyed since 1908, and by attempting to throw plaintiff into the hands of a receiver. Furthermore, the cumulative penalties, which run into thousands of dollars a month for the indefinite period of the litigation, are so onerous that plaintiff might well be unwilling to jeopardize its solvency by taking the risk of an unfavorable decision. When the penalties are so severe that plaintiff, as a practical proposition, cannot run the risk of asserting his constitutional right in court, equity has power to protect a citizen while he has his day in court. Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714, 13 L.R.A. (N.S.) 932, 14 Ann.Cas. 764; Marrs v. City of Oxford (D.C.Kan.) 24 F.(2d) 541, 545, affirmed (C.C.A.) 32 F.(2d) 134, 67 A. L.R. 1336, certiorari denied, 280 U.S. 563, 50 S.Ct. 24, 74 L.Ed. 617; Oklahoma City v. Dolese (C.C.A.10) 48 F.(2d) 734. Again, the multiplicity of actions necessary for redress at law supports the jurisdiction of equity.

 *It is then asserted that the state* is a necessary party unless the court holds the statute unconstitutional. It is conceded that the state is not a necessary party where a state official invades plaintiff's rights under the color of an unconstitutional statute; but it is argued that it is a necessary party where the officer acts under color of a valid statute which does not authorize his invasion. The distinction is not tenable. State officers may exercise only such authority as is conferred upon them by Constitution or statute; if they, under color of statutory authority, threaten ir-

reparable injury to a citizen, that citizen may invoke the aid of the courts to determine whether a statute authorizes the act done, and the state is not a necessary party. If it is determined that the threatened acts are within the scope of his statutory authority, and that the statute is valid, then his acts are the acts of the state and the injunction will not issue. But if it be determined that no statute authorizes the threatened acts, then an injunction against exercising a power not granted by statute is not a proceeding against the state but one against an individual officer who is attempting to go beyond the powers with which the state has vested him. His unlawful acts are not the acts of the state, and the state is not a necessary party. Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714, 13 L.R.A.(N.S.) 932, 14 Ann. Cas. 764; Truax v. Raich, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131, L.R.A.1916D, 545, Ann.Cas.1917B, 283; Sterling v. Constantin, 287 U.S. 378, 393, 53 S.Ct. 190, 77 L. Ed. 375.

Every point, we believe, which has been urged in support of this motion is answered by the recent case of Lee v. Bickell, 292 U.S. 415, 54 S.Ct. 727, 78 L.Ed. 1337. That suit, like the one at bar, was brought to enjoin state officers from collecting state taxes; in that suit, as in this, the state was not a party. In that suit as here, it was alleged in the bill that the statute, rightly construed, did not apply to plaintiff, but if it did apply, it was unconstitutional. There, as here, a three-judge court was assembled. There, as here, the constitutional question was not reached, the court holding the statute did not apply in plaintiff's case. The Supreme Court there modified and affirmed an order enjoining the state officers from undertaking to collect the tax, thus holding that the state was not a necessary party, that the remedy at law was inadequate, and that a three-judge court could enjoin state officers who exceed their statutory authority without deciding the constitutional question which required the assembling of the three-judge court. Glenn v. Field Packing Company, 290 U.S. 177, 54 S.Ct. 138, 78 L.Ed. 252, is another case closely in point.

Defendants suggest that this court decide first whether the statute is constitutional; if the answer is in the affirmative, that defendants be permitted to sue in the state courts for the tax, the penalties being stayed, and withhold final decree until the state court has settled the question of statutory construction. This we cannot do. It was within defendants' power to have accomplished this end by suing in the state court before final hearing of this case, procuring a stay of enforcement of the statute pendente lite in the state court, which would have stayed the action here to restrain enforcement of the statute. 28 U.S. C.A. § 380. This procedure was not followed. The final hearing has been held, and that procedure is not now available. We cannot, as Judge Cardozo said in Lee v. Bickell, supra, decide the constitutional question until we first decide whether the statute applies to the business sought to be taxed. In order to decide the motion, we must decide whether the statute is applicable. Having decided that, it would serve no useful purpose to permit defendants to bring another suit in the state court to decide the same question. If the parties in the state court suit are the same, this decision is an adjudication; if they are different, no permission from us is necessary. We appreciate, however, that the interpretation eventually put upon these statutes by the Supreme Court of New Mexico will be binding on this court, and the injunctive decree will contain the qualifying proviso indicated in the last paragraph of the opinion in Lee v. Bickell, supra.

The defendants will be enjoined from attempting to collect from plaintiff the taxes or penalties imposed upon insurance companies, for the period covered by the allegations of the bill of complaint; they will be enjoined from revoking or refusing to renew plaintiff's license, and from seeking to put plaintiff into receivership, for failure to pay such taxes; and from examining the company in order to enforce the collection of such taxes. The order should make it clear that the injunction restrains defendants only from their efforts to collect such taxes, and not from exercising authority over plaintiff conferred by the statute for the protection of members of fraternal societies. Either party may later apply for modification of this order in event the Supreme Court of New Mexico should hold that the tax on insurance companies applies to fraternal societies.

The decree can be settled upon seasonable notice if the parties cannot agree upon its form.