## SOVEREIGN CAMP, W. O. W. v. MURPHY, Commissioner of Insurance of State of Iowa, et al.
### No. 4607.

District Court, S. D. Iowa, Central Division.
Dec. 2, 1936.

Eugene D. Perry, of Des Moines, Iowa, John T. Harding and David A. Murphy, both of Kansas City, Mo., and Rainey T. Wells, of Omaha, Neb., for plaintiff.

Edward L. O'Connor, Atty. Gen., and Lehan T. Ryan, Asst. Atty. Gen., for defendants.

Before WOODROUGH, Circuit Judge, and DEWEY and NORDBYE, District Judges.

WOODROUGH, Circuit Judge.

On application for interlocutory injunction before three-judge court:

Iowa requires foreign insurance companies to pay as taxes a percentage of premiums received from their insurance business done in the state but exempts fraternal beneficiary associations. The statute (Code of Iowa 1935, § 7022) reads:

"7022. *Foreign companies—tax on gross premiums.* Every insurance company incorporated under the laws of any state of the United States other than the state of Iowa, not including associations operating under the provisions of chapter 400, or fraternal beneficiary associations doing business in the United States, shall, at the time of making the annual statements as required by law, pay into the state treasury as taxes two and one-half per cent of the gross amount of premiums received by it for business done in this state, including all insurance upon property situated in this state and upon the lives of persons resident in this state during the preceding year."

The plaintiff, Sovereign Camp of the Woodmen of the World, is organized under the laws of Nebraska as a fraternal beneficiary association and has year after year, for many years, applied for and received a license to carry on business as such in the state of Iowa. It has built up a very substantial business in some forty states of the Union and in the year 1935 had 145 camps, as its lodges are designated, all duly organized and functioning within the state of Iowa, and it had not less than 5,600 members within the state. Its reports to the commissioner of insurance always revealed clearly the nature of the business it was transacting in Iowa, and it has always claimed to be exempt from, and was never called on to pay, the premium tax mentioned in the above section until early in 1936 the Iowa commissioner of insurance refused to issue a license for 1936 unless, as a condition precedent, the plaintiff would pay the statutory 2½ per cent. tax on the insurance premiums received on business done by the plaintiff in the state during 1935, the amount demanded being $4,555.52.

The commissioner's claim was that such changes had taken place in the plaintiff's structure and business that the corporation was no longer being carried on as a fraternal beneficiary association entitled to the exemption of the statute, but was being carried on as "an insurance company incorporated under the laws of a state other than Iowa," within the meaning of the first lines of the statute above quoted, and was subject to the tax.

This suit is brought against the proper state officers and seeks, among other things, to enjoin them from attempting to collect the tax so demanded from the plaintiff. It is alleged that there are domestic insurance companies organized and domiciled within the state of Iowa and that Iowa does not impose the 2½ per cent. tax on premiums received by such domestic insurance companies but only taxes such companies one per cent. upon their gross premiums, less numerous deductions (section 7025, Code of Iowa, 1935), and the plaintiff claims that, if the quoted tax statute is applied to the plaintiff, a violation of the equal protection clause of the Fourteenth Amendment to the Constitution of the United States will result.

The defendants deny that application of the statute and the 2½ per cent. tax to the plaintiff will cause unlawful discrimination in favor of domestic insurance companies. They admit that there is a difference in the modes of taxing domestic and foreign insurance companies, but assert that a substantial equality of the tax burden upon each kind of insurance company is brought about by reason of the levy of real and personal property taxes upon the domestic companies which the foreign companies are not required to pay because the foreign companies do not have much of that kind of property in the state.

The issues thus joined present a controversy between parties of diverse citizenship involving more than $3,000 in which

the relief sought is an interlocutory injunction against the enforcement by state officers of a state statute claimed to be unconstitutional if applied to the plaintiff as the state officers are attempting to apply it.

■ The federal statute prohibits any justice of the Supreme Court, any district court or judge thereof, or any circuit judge acting as a district judge from granting any interlocutory injunction in such a case and requires that the case "shall be heard and determined by three judges." 28 U.S.C.A. § 380. This case, therefore, is cognizable only by this court of three judges assembled as provided for in the same statute.

■ The plaintiff also claims that it is and always has been a fraternal beneficiary association and that, as such it is expressly exempt from having to pay any part of the 2½ per cent. premium tax applied to foreign companies in general by the quoted statute. The claim being controverted by the defendants an issue is presented which does not involve the constitutionality of the state statute, but merely its interpretation and application to the facts presented in the evidence. If the issue stood alone as the only one in the case, it could be tried by a district court presided over by one judge. But the duty imposed on the three-judge court by the federal statute to hear and determine the plaintiff's suit for injunction against the attempted application to it of the alleged unconstitutional state tax statute carries with it the duty on the part of the same three-judge court to try the whole case. The parties cannot be relegated to piecemeal trials of the several issues joined by them in their case. Siler v. Louisville & Nashville R. Co., 213 U.S. 175, 29 S.Ct. 451, 53 L.Ed. 753; Louisville & N. R. Co. v. Garrett, 231 U.S. 298, 34 S.Ct. 48, 58 L.Ed. 229; Van Dyke v. Geary, 244 U.S. 39, 37 S.Ct. 483, 61 L.Ed. 973; Sterling v. Constantin, 287 U.S. 378, 53 S.Ct. 190, 77 L.Ed. 375; Modern Woodmen of America v. Casados (D.C.) 15 F.Supp. 483.

■ We think the allegations in the bill and the proof made in support sustain the plaintiff's allegation that it is without adequate remedy at law. No statute of Iowa is pointed out authorizing suit against the state to recover the tax in question if it were paid under protest, and the threat of the insurance commissioner is to revoke the plaintiff's license to do business in the state unless the exactions are met. The injury to long-established business and penalties to which the plaintiff and its officers would be subject on failure to comply with the defendants' demands would amount to irreparable injury. Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714, 13 L.R.A. (N.S.) 932, 14 Ann.Cas. 764; Marrs v. City of Oxford (D.C.) 24 F.(2d) 541, affirmed (C.C.A.) 32 F.(2d) 134, 67 A.L.R. 1336; Oklahoma City, Okl., v. Dolese (C.C.A.10) 48 F.(2d) 734; Modern Woodmen of America v. Casados (D.C.) 15 F.Supp. 483, 486.

■ On the issue as to whether the plaintiff is and has been a fraternal beneficiary association, section 8777, Code of Iowa 1935, provides:

"8777. *Definition.* A fraternal beneficiary association is hereby declared to be a corporation, society, or voluntary association, formed or organized and carried on for the sole benefit of its members and their beneficiaries, and not for profit, and having a lodge system, with ritualistic form of work and representative form of government."

It is clear that the plaintiff came within the letter and spirit of this definition at the time it was organized and for many years thereafter. But defendants rely upon the changes that have gradually taken place in the plaintiff's practices and business and contend in substance that in 1935, (1) the plaintiff's lodge system with ritualistic form of work had ceased to have real vitality; (2) that no representative government functioned but in fact a few officers perpetuated themselves in control of the company; (3) that the corporation was not carried on for the sole benefit of its members; (4) that it was carried on for profit; (5) that it issued substantially the same insurance contracts as old line insurance companies do; (6) that some of the insurance contracts so issued go beyond the powers granted by the Iowa statutes to fraternal beneficiary associations. For these reasons the character of the plaintiff as a fraternal beneficiary association is said to have been lost so that it was no longer entitled to the exemption from the tax.

1. The evidence is that the lodge system of the plaintiff is constantly maintained and ritualistic work is carried on as prescribed in the constitution and by-laws. Solicitation for new members and new insurance business is carried on by agents who work for commissions very similar to those paid to insurance agents generally. But the process is different in that the new members are initiated into camps with ritual, and the

fraternal, patriotic and charitable features are always kept prominently alive.

2. The principal officers are maintained in office over long periods and large salaries are paid, but the corporation has always maintained its representative form of government.

3, 4. The claims that the corporation was not carried on for the sole benefit of its members and that it was carried on for profit are not based on the payment of the large salaries to the officers, but such claims are rested principally upon the manner and extent to which the corporation has departed from its original "post loss" methods of assessing members to pay death benefits and now builds up and maintains funds and reserves to carry out its contracts. The amounts of the dues which the members are required to pay and the amounts of the benefits and paid-up protection granted to them are arrived at by actuarial computations made mathematically from mortality tables and interest assumptions and loading for expenses and contingencies. Such computations are made as to each kind of insurance contract issued and the resources of the corporation are behind the contracts. But, in the bookkeeping accounts, reserves are set up which total very large figures at the present time. It is contended for the defendants that the reserves are built up by payments from the members but that they are not intended to be and are not disbursed to the members who made the payments which produced the excess over benefits represented by the reserves. So it is said that to that extent the corporation was not carried on for the sole benefit of its members, but was carried on for profit. We find no merit in the contention, but are convinced that in so far as the reserves are anything more than mere bookkeeping entries they are intended to and do inure to the benefit of every member by providing stability and solvency to the corporation. The evidence is that, whenever the financial condition warrants it, the governing body orders the passing or waiving of one or more monthly payments from the members, or it orders the making of disbursements to the members, diminishing to that extent the cost of their insurance. The testimony of the actuary makes it clear, however, that such passing of monthly payments and disbursements and the reserves from which the disbursements are drawn constitute in no proper sense a profit. The corporation follows a sensible and prudent course in the mat-ter of building up and maintaining reserve accounts, but its action presents no ground to question the right of the plaintiff to the tax exemption claimed.

Especial exception is taken to an item appearing on the books of the plaintiff called "contingency reserve" amounting to more than $1,000,000. It is contended that such "contingency reserve" is not the reserve permitted by the statute, but is an additional reserve in excess of the legal reserve, and that the retention thereof by the society without apportioning it among the members stamps it as a profit-making insurance organization. The evidence satisfies us that the legal reserve could not be computed with such exactness as to be completely sufficient for all emergencies or contingencies and that the so-called "contingency reserve" was properly set up for the very purpose that its name indicates. The contingency reserve is small in the financial structure and not out of line with the general practice of insurance companies, old line and fraternal.

In the case of Fowler v. Sovereign Camp, W. O. W., 106 Neb. 192, 183 N.W. 550, in the Supreme Court of Nebraska, it was contended that changes made in the plaintiff's methods of carrying on its insurance business had resulted in fundamentally changing its fraternal character. The court gave the question full consideration and overruled the contention. We are in accord with the decision. See also, Jenkins et al. v. Talbot et al., 338 Ill. 441, 170 N.E. 735, 80 A.L.R. 638.

5. All of the different forms of benefit certificates which have been issued by the plaintiff have been received in evidence and those claimed to be unauthorized by the Iowa fraternal insurance statute have been analyzed and explained by the experts. They contain benefit options to the member almost as varied as those contained in the policies issued by old line companies, including double indemnity for accidental death, twenty payment life, and endowment options and annuity options. The Iowa statutes specifically prescribe the mortality tables and interest assumptions by which the fraternal beneficiary associations are compelled to make adequate provision to meet the benefits granted in the certificates they issue, and it is not claimed that the plaintiff fails in that regard. On the contrary, the evidence shows that a very great advance in safety has been made from the unscientific and insecure insurance of the early days of

fraternal insurance. But the question is whether Iowa has given such associations as the plaintiff the authority to issue insurance contracts such as described. The controlling section (8782, Code of Iowa 1935) is in very broad terms and reads:

"8782. *Benefits.* Any such society may grant to its members extended and paid-up protection or such withdrawal equities as its constitution and laws may permit, provided that such grants shall in no case exceed in value the portion of the reserve to the credit of the members to whom they are made."

We do not have judicial interpretation of the "withdrawal equities" which fraternals are thus authorized to grant to their members but no reason has been suggested why the expression should not be deemed to cover all of the options to which the defendants have taken exception. The legislative intent reflected in the whole section is not to put a limit upon the benefits or extended and paid-up protection which the fraternals might provide in their constitution and by-laws and grant to their members. It appears to be the legislative intent to permit any payments to be contracted for and granted to members pursuant to the constitution and by-laws of the association, provided that the value of the reserves to the credit of the member should not be exceeded. It is said that pure endowment is not provided for in the Iowa statute covering fraternals, and that options, in the nature of such pure endowments, are included in certain of plaintiff's certificates and, therefore, the plaintiff should be deemed to have lost its right to be exempted from the tax in question. But the weight of the actuarial evidence produced would indicate that all of the several amounts which the options of the certificates permitted the member to receive were "withdrawal equities" within the meaning of the statute (8782 supra) and were authorized. The actuary for the plaintiff prepared the different forms of benefit certificates and caused the computations to be made with particular regard to the Iowa, as well as the Nebraska, statute and conformably thereto.

We are satisfied that the contracts shown to have been issued in Iowa were drawn in the honest belief that they were authorized by the Iowa statute and that they contain no options which were expressly prohibited. They come generally within the broad provisions for "extended benefits," "paid up benefits" and "withdrawal equities" mentioned in the Iowa statute and their issuance did not deprive the plaintiff of its fraternal character.

6. Counsel for the defendants have painstakingly compiled a bill of particulars specifying some forty-five instances in which the insurance contracts now made by the plaintiff depart from the fraternal benefits originally granted to members and are now assimilated to old line insurance contracts. It is demonstrated that the plaintiff has largely abandoned unscientific insurance and now makes its contracts in safer conformity to experience. But such a course is required by the Iowa statutes. They compel the use of mortality tables and the exaction of premiums based thereon and adequate for the fulfillment of the contracts. They also make it necessary for the plaintiff to build up and maintain reserves expressly (section 8842-b3) and by necessary implication (sections 8778, 8782, 8784, 8825, 8829, 8833). It is contended that it is the intent of the Iowa statute that particular reserve funds should be segregated physically from general funds in order to cover particular benefit options and that the plaintiff has failed to comply. We do not find that the plaintiff has offended in the matter of keeping its reserves and certainly has done nothing in this regard to lose its character as a fraternal beneficiary association.

The testimony presented for defendants convinces that many of the reasons which originally justified exempting fraternals from taxation no longer apply to such great financial institutions as the plaintiff has grown to be. But such considerations are for the Legislature. The Legislature has sanctioned the changes in the methods of the fraternals which have made their growth possible but has kept intact and without change their classification as exempt corporations.

The plaintiff's insurance contracts continue to be open contracts—subject to be changed at any time after issue, pursuant to its constitution and by-laws. Re-rating has taken place several times and may be lawfully resorted to again if necessity arises. The plaintiff's form of government and ritual conform to the Iowa statute and it was not carried on for profit in the tax year in question.

The plaintiff has prayed for a declaratory judgment adjudicating its status as a fraternal beneficiary association and though we are of opinion that upon final

hearing it would be entitled thereto, we do not so adjudicate because this hearing was upon application for interlocutory injunction only.

Findings of fact and conclusions of law are made herewith and exceptions to our findings and conclusions are allowed to the defendants.

Temporary injunction as prayed should issue against the defendants. Plaintiff's bond fixed at $5,000.

The court finds it unnecessary to pass upon the constitutionality of the statute attacked herein as sought to be applied to the plaintiff.