**OSAGE TRIBE OF INDIANS et al. v.
ICKES et al.**
Civil Action No. 10787.

District Court of the United States for the
District of Columbia.
March 19, 1942.

180

T. P. Gore and Leslie C. Garnett, both of Washington, D. C., for plaintiffs.

Thomas L. McKevitt and Ralph S. Boyd, both of Washington, D. C., Attys., Department of Justice, for defendant Harold L. Ickes, Secretary of the Interior of the United States.

Peter Q. Nyce and Roy St. Lewis, both of Washington, D. C., and Sim T. Carman, Co. Atty., and Charles R. Gray, both of Pawhuska, Okl., for defendant Tom H. Fraley, Treasurer of Osage County, Okl.

Before MILLER and VINSON, Associate Justices of the United States Court of Appeals for the District of Columbia, and LETTS, Justice of the District Court of the United States for the District of Columbia, holding a Three Judge Statutory Court.[1]

MILLER, Associate Justice.

Plaintiff, the Osage Tribe of Indians, brought this suit in its own right and through its Principal Chief, Fred Lookout, to restrain the Secretary of the Interior, Harold L. Ickes, from paying to defendant, Tom H. Fraley, Treasurer of Osage County, Oklahoma, the sum of $1,535.70, part of the proceeds of royalties from gas and oil leases which had been executed by the Tribal Council. The royalties thus received were required by the Act of June 28, 1906,[2] to be placed in the Treasury of the United States to the credit of the members of the Tribe for the use and benefit of the individual members of the Tribe. The 1906 Act also provided for taking a tribal roll and for equal division of the tribal lands and funds among the members of the Tribe. It provided for allotment of the surface of the land in severalty among the members of the Tribe [3] but reserved mineral rights to the use of the Tribe for a period of twenty-five years, after which they were to become the property of the individual owners of the land, unless otherwise provided for by Act of Congress.[4] The Tribal Council was authorized to make leases for the mineral rights with the approval of the Secretary of the Interior.[5] Section 4 of the Act [6] provided: "That all funds belonging to the Osage tribe, and all moneys due, and all moneys that may become due, or may hereafter be found to be due the said Osage tribe of Indians, *shall be held in trust* by the United States for the period of twenty-five years from and after the first day of January, nineteen hundred and seven, * * *." [Italics supplied] Section 4 of the Act of 1906 [7] also provided that the funds therein specified should be segregated and placed to the credit of the individual members of the Tribe; these credits to draw interest, which when accrued was to be paid quarterly to the members entitled. Royalties from mineral leases were likewise to be placed in the Treasury to the credit of the members of the Tribe and distributed to the individual members "in the manner and at the same time that payments are made of interest, *on other moneys* held in trust * * *" [Italics supplied] with the exception of sums reserved for schools, agency, and emergency funds.

Section 5 of the 1906 Act [8] provided that "at the expiration of the period of twenty-five years from and after the first day of January, nineteen hundred and seven, the lands, mineral interests, and moneys, herein provided for and held in trust by the United States shall be the absolute property of the individual members of the Osage tribe * * * as herein provided, and said members shall have full control of said lands, moneys, and mineral interests, except as hereinbefore provided" with the right of inheritance according to Oklahoma laws.[9] In 1929,[10] pursuant to the power expressly reserved in the 1906 Act, the earlier Act was so amended as to extend the term of the trust until 1959. In 1921 the reservation to the Tribe, of minerals under the

[1] Act of August 24, 1937, 50 Stat. 752, 28 U.S.C.A. § 380a.

[2] 34 Stat. 539.

[3] Act of June 28, 1906, 34 Stat. 539, 540.

[4] Id. at 542.

[5] Id. at 543.

[6] Id. at 544.

[7] Ibid.

[8] 34 Stat. 539, 544, 545.

[9] Id. at 545.

[10] Act of March 2, 1929, 45 Stat. 1478. The term of the trust was subsequently extended to 1984 by the Act of June 24, 1938, 52 Stat. 1034.

land, was extended to 1946.[11] And by the Act of 1921,[12] the Act of June 6, 1906 was also so amended as to permit the State of Oklahoma to levy a gross production tax upon all oil and gas produced in Osage County, in lieu of all other state and county taxes theretofore levied on the production of gas and oil in that county. The 1921 Act also provided that the Secretary of the Interior should pay one per centum of royalties received under the Indians' gas and oil leases to Osage County for use in construction of roads and bridges.[13]

Pursuant to the 1921 Act, the gross production tax levied by the State of Oklahoma has been paid by the oil companies producing gas and oil under the tribal leases, and the Secretary of the Interior has paid to Osage County approximately $1,092,338.17 for construction of roads and bridges. Provision for payment of this one per centum of royalties was discontinued by Act of Congress in 1940.[14] There still remains, however, an undistributed residue of the one per centum fund amounting to $1,535.70. This is the subject of the present suit. The complaint contains, among others, the following allegation: "* * * plaintiffs aver that the provisions of said Section 5 of the Act of March 3, 1921, authorizing and directing the Secretary of the Interior 'to pay, through the proper officers of the Osage Agency, to Osage County, Oklahoma, an additional sum equal to 1 per centum of the amount received by the Osage Tribe of Indians as royalties from production of oil and gas, which sum shall be used by said county only for the construction and maintenance of roads and bridges therein' * * * was an unconstitutional taking and deprivation of plaintiffs' property or moneys, and was repugnant to the Constitution of the United States in that it deprived the plaintiffs of their property without compensation and without due process of law." The prayer of the complaint asks (1) a *permanent* injunction restraining the Secretary from distributing to Osage County the residue of the fund above described; (2) a direction to the Secretary to distribute the said sum

of $1,535.70 to the Osage Indians; (3) that a statutory three judge court be constituted to hear and determine the application for injunction.[15] Thereafter, on May 29, 1941, the defendant, Harold L. Ickes, moved to dismiss the complaint for the reason that the United States of America is an indispensable party defendant, which has not consented to be sued and which cannot be sued without its consent. On the same date defendant Fraley also filed a motion to dismiss, but for reasons which will appear, it is not necessary to consider his motion further. On June 14, 1941, plaintiffs filed an application containing the following statement: "Since the complaint seeks an injunction to restrain the payment of funds under said Act of Congress upon the ground that a part of said Act is repugnant to the Constitution of the United States, application is made for an injunction and for a request to the Chief Justice of the United States Court of Appeals for the District of Columbia to designate two other Judges to participate in hearing and determining this application." On October 3, 1941, upon the request of Associate Justice F. DICKINSON LETTS, of the District Court of the United States for the District of Columbia, the present three judge statutory court was constituted, by order of Chief Justice D. LAWRENCE GRONER, of the United States Court of Appeals, to hear and determine the application.

Upon the hearing, which was held pursuant to the foregoing order, counsel for defendants insisted upon disposition of the pending preliminary motions, as was their right. The court heard argument upon all phases of the case; assuming for purposes of the argument that the question of constitutionality presented in the complaint and application might also be involved in the determination of the preliminary motions. We have concluded, however, that the motion to dismiss is well founded and should be granted for the following reasons.

■ The United States is an indispensable party to this suit. Plaintiffs' position is that by virtue of the Act of 1906, the royalties were placed to their individual credit,

---

[11] Act of March 3, 1921, 41 Stat. 1249. The reservation of mineral rights to the Tribe was further extended to 1958 by the Act of March 2, 1929, 45 Stat. 1478, and to 1983, by the Act of June 24, 1938, 52 Stat. 1034.

[12] Act of March 3, 1921, 41 Stat. 1249.

[13] Act of March 3, 1921, 41 Stat. 1251.

[14] Approved April 25, 1940, 54 Stat. 168. A different arrangement was adopted. Instead of a 1% payment to the county, one-fifth of the state gross production tax must now be paid to the county. One-half goes for roads and one-half for schools.

[15] Act of August 24, 1937, 50 Stat. 752, 28 U.S.C.A. § 380a.

not as trust funds, but as segregated, individual property of the members of the Tribe; hence, that Congress lacked the power to confer, upon the Secretary, authority to distribute any part of the funds to Osage County; consequently, that the Act of 1921 deprived them of property, in disregard of their vested rights. The Government contends that the United States is a trustee of the funds, with power to act with respect to them; consequently, that it is interested, adversely to plaintiffs, and is an indispensable party to a suit involving the right to the fund in dispute. We see no escape from the logic of the Government's contention. If the present case were to go to trial and judgment, and if in such a judgment plaintiffs' contention should be maintained, it is obvious that the claim of the United States, that it is a trustee in possession, with power to act, would be decided against it, without an opportunity to be heard.

 As was said by the Supreme Court in Morrison v. Work,[16] the claim of the United States is at least a substantial one. No more is necessary for disposition of the motion to dismiss.[17] The decision in the Morrison case is directly applicable and conclusive.

 It is, consequently, unnecessary to decide any constitutional question; and, being unnecessary, we refrain from doing so;[18] thus giving full recognition to the presumption of constitutionality.[19] The Government's interest, and the indispensability of the United States as a party, depends upon the relationship which exists between it and the Indians generally[20] and, particularly, upon the power asserted in the 1906 Act.[21] Plaintiffs do not challenge

[16] 266 U.S. 481, 485, 486, 45 S.Ct. 149, 151, 69 L.Ed. 394: "The United States is now exercising, under the claim that the property is tribal, the powers of a guardian and of a trustee in possession. Morrison's contention is that, by virtue of the act of 1889 and the agreements made thereunder, the ceded lands ceased to be tribal property and the rights of the Indians in the lands and in the fund to be formed became fixed as individual property. The Court of Appeals held this contention to be unfounded. *We have no occasion to determine whether it erred in so ruling. The claim of the United States is, at least, a substantial one.* To interfere with its management and disposition of the lands or the funds by enjoining its officials, would interfere with the performance of governmental functions and vitally affect interests of the United States. It is, therefore, an indispensable party to this suit." [Italics supplied]

[17] The following tests were suggested in State of Washington v. United States, 9 Cir., 87 F.2d 421, 427, 428, by Judge Haney, to determine the necessity for joinder: " * * * (1) Is the interest of the absent party distinct and severable? (2) In the absence of such party, can the court render justice between the parties before it? (3) Will the decree made, in the absence of such party, have no injurious effect on the interest of such absent party? (4) Will the final determination, in the absence of such party, be consistent with equity and good conscience? * * * if any one of the four questions is answered in the negative, then the absent party is indispensable."

The interest of the United States can hardly be described as "distinct and sev-

erable" in this proceeding, the object of which is to characterize as invalid an exercise of its power as trustee under the Act of 1906. The injurious effect on the interest of the United States by a decree granting the relief sought is patent. Where the United States holds the title to Indian lands in trust, it is necessarily interested in the outcome of suits against such property and is an indispensable party. State of Minnesota v. United States, 305 U.S. 382, 386–388, 59 S.Ct. 292, 83 L.Ed. 235. And in suits touching the proper execution of a trust, the trustee is an indispensable party. Thayer v. Life Association of America, 112 U.S. 717, 719, 5 S.Ct. 355, 28 L.Ed. 864.

[18] Siler v. Louisville and Nashville R. R., 213 U.S. 175, 193, 29 S.Ct. 451, 455, 53 L.Ed. 753: "Where a case in this court can be decided without reference to questions arising under the Federal Constitution, that course is usually pursued and is not departed from without important reasons."

[19] United States v. Butler, 297 U.S. 1, 67, 56 S.Ct. 312, 80 L.Ed. 477, 102 A. L.R. 914; Life & Casualty Ins. Co. v. McCray, 291 U.S. 566, 572, 54 S.Ct. 482, 78 L.Ed. 987.

[20] See Cohen, Handbook of Federal Indian Law (1941) 97, and authorities there cited.

[21] 34 Stat. 539. Cf. Morrison v. Work, 266 U.S. 481, 487, 488, 45 S.Ct. 149, 152, 69 L.Ed. 394: "If through officials of the United States these lands, or the proceeds thereof, or the accruing interest, are improperly disposed of, *it is the United States, not the officials, which is under obligation to account to the Indians therefor. In other words, the right of the Indians is merely to have the*

the constitutionality of that Act or the power therein asserted. Indeed, they rely upon it to assert their alleged cause of action. If their interpretation of the 1906 Act is wrong, then, presumably, their attack upon the 1921 Act fails. In any event, this is the very heart of their case; and as we have already indicated, the United States must be made a party to its trial and decision.

In summary it may be said that there are three questions entangled in the arguments thus far considered: (1) Is the United States an indispensable party; (2) what is the meaning of the 1906 Act; (3) in light of that meaning was the 1921 Act unconstitutional? In disposing of the motion to dismiss, we are required to decide only the first of the three; or, at least, to inquire into the second only far enough to answer the first. In the trial and decision of the second and third questions, on their merits, the United States is, in our opinion, required to be present and heard as an indispensable party. Whether or not the latter questions can even be tried, depends upon whether the United States consents to be sued.

■ The Government has challenged the power of this court, as presently constituted,[22] to pass upon the motion to dismiss; its theory being that as no constitutional issue is presented by the motion, the court lacks jurisdiction, and that a single trial judge, acting alone, should have passed upon it.[23] We have no doubt that a single judge could have passed upon the motion of defendant Ickes.[24] While it is improper for such a judge to dismiss a complaint on the merits where an interlocutory injunction is sought upon constitutional grounds,[25] it is, nevertheless, not only appropriate for him carefully to scrutinize the complaint to ascertain whether a substantial claim of unconstitutionality has been presented,[26] but it is his duty to do so,[27] in order to determine whether the case is one requiring disposition by a special court of three judges.[28]

■ The lack of a substantial question of constitutional law may appear either because it is obvious from a reading of the statute or because it so clearly results from previous decisions of the Supreme Court as to foreclose the subject.[29] As we have pointed out, in the present case, an examination of the statutes, and of the cases which interpret them, reveals that the United States is an indispensable party to the present suit and no question of constitutionality is involved in arriving at that conclusion.[30] Consequently, it was the duty of the single judge to decide that the United States was an indispensable party. Having done so it was his duty to dismiss the complaint.

■ But power in the single trial judge is not necessarily inconsistent with

*United States administer properly the trust assumed.* It resembles the general right of every citizen to have the government administered according to law and the public moneys properly applied. Courts have no power, under the circumstances here presented, to interfere with the performance of the functions committed to an executive department of the government by a suit to which the United States is not, and cannot be made, a party." [Italics supplied]

22 Act of August 24, 1937, 50 Stat. 752, 28 U.S.C.A. § 380a.

23 Accord: Northern Pac. Ry. v. Board of Railroad Com'rs, D.C.Mont., 34 F.2d 295, 297. See Great Falls Gas Co. v. Public Service Commission, D.C.Mont., 39 F.2d 176, 177, 180.

24 See Home Furniture Co. v. United States, D.C.W.D.Tex., 2 F.2d 765, 767, affirmed 271 U.S. 456, 46 S.Ct. 545, 70 L.Ed. 1033.

25 Ex parte Northern Pacific Ry., 280 U.S. 142, 50 S.Ct. 70, 74 L.Ed. 233; Stratton v. St. Louis Southwestern Ry., 282 U.S. 10, 15, 51 S.Ct. 8, 75 L.Ed. 135; Ex parte Metropolitan Water Co., 220 U.S. 539, 544, 545, 31 S.Ct. 600, 55 L. Ed. 575.

26 Ex parte Poresky, 290 U.S. 30, 54 S. Ct. 3, 78 L.Ed. 152.

27 California Water Service Co. v. Redding, 304 U.S. 252, 254, 255, 58 S.Ct. 865, 82 L.Ed. 1323.

28 J. B. Schermerhorn, Inc., v. Holloman, 10 Cir., 74 F.2d 265, 266, certiorari denied 294 U.S. 721, 55 S.Ct. 548, 79 L. Ed. 1253.

29 California Water Service Co. v. Redding, 304 U.S. 252, 254, 255, 58 S.Ct. 865, 82 L.Ed. 1323.

30 See note 17 supra; Ex parte Bransford, 310 U.S. 354, 361, 362, 60 S.Ct. 947, 951, 84 L.Ed. 1249: "There is no indication that Congress sought by Section 266 to have every attack on the constitutionality of a state statute determined by a three-judge court. It sought such a bench only to avoid precipitate determinations on constitutionality on motions for interlocutory injunctions."

similar power in the special court once it has been convened.[31] After all it, too, is a district court, presumably vested with all necessary and proper powers. No limitation appears in the statute upon the power of the special court to act with reference to such preliminary questions.[32] In several cases such courts have acted upon preliminary questions.[33] And, no doubt, the unnecessary participation of two additional judges would not invalidate the court's action in any event,[34] or cut off any right of privilege of appeal.[35]

But if it is not necessary for our decision that we should determine or declare the limits of power of the special court, we should avoid doing so; leaving performance of that duty to the Supreme Court, if and when it becomes necessary. Assuming that this court has power to act, it does not necessarily follow that it should act.[36] As we read the decisions of the

[31] Ziffrin, Inc., v. Martin, D.C.E.D.Ky., 24 F.Supp. 924, 927, affirmed on constitutional grounds 308 U.S. 132, 60 S. Ct. 163, 84 L.Ed. 128: "Under [Sec. 266, Judicial Code, 28 U.S.C.A. § 380] the three judge court has the same power as a single district judge. It is in fact a district court composed of three judges instead of one. One of the questions for determination is the sufficiency of the pleadings to state a cause of action. The only way in which this can be determined is to decide whether or not the Kentucky Statute is constitutional. We are of the opinion that this three judge court has authority to rule upon this motion to dismiss."

[32] Act of August 24, 1937, 50 Stat. 752, 28 U.S.C.A. § 380a.

[33] California Water Service Co. v. Redding, D.C.N.D.Cal., 22 F.Supp. 641, 644, affirmed 304 U.S. 252, 254, 58 S.Ct. 865, 82 L.Ed. 1323 (dismissal for want of a substantial federal question); Kroger Grocery & Baking Co. v. Lutz, 299 U.S. 300, 57 S.Ct. 215, 81 L.Ed. 251 (affirming dismissal for want of requisite jurisdictional amount); Connor v. Rivers, D. C.N.D.Ga., 25 F.Supp. 937, 938, affirmed 305 U.S. 576, 59 S.Ct. 359, 83 L.Ed. 363 (same); Home Furniture Co. v. United States, D.C.W.D.Tex., 2 F.2d 765, 767, affirmed 271 U.S. 456, 461, 46 S.Ct. 545, 70 L.Ed. 1033 (dismissal for improper venue); Buck v. Gallagher, D.C.W.D. Wash., 36 F.Supp. 405, 406, appeal dismissed sub nom. Buck v. Case, 62 S.Ct. 579, 86 L.Ed. —— (dismissal on equitable ground of "unclean hands"); Arneson v. Denny, D.C.W.D.Wash., 25 F.2d 993, 995 (dismissal for lack of notice to indispensable parties).

The lack of uniformity in dealing with such preliminary questions may be seen by noting cases in which applications for injunctions were dismissed by the district judge to whom presented. Cooney v. Legg, D.C.S.D.Cal., 34 F.Supp. 531, 532 (dismissed for failure to show requisite jurisdictional amount); Stone v. Christensen, D.C.Or., 36 F.Supp. 739, 743 (same); Rok v. Legg, D.C.S.D.Cal., 27 F.Supp. 243, 244 (absence of substantial federal question); Farr v. O'Keefe, D. C.S.D.Miss., 27 F.Supp. 216, 217 (dismissal for "unclean hands").

[34] Healy v. Ratta, 1 Cir., 67 F.2d 554, 556, reversed on other grounds, 292 U.S. 263, 54 S.Ct. 700, 78 L.Ed. 1248; Public Service Commission v. Brashear Freight Lines, Inc., 312 U.S. 621, 626, 61 S.Ct. 784, 787, 85 L.Ed. 1083: "But the fact that it was mistakenly assumed that the motion should be passed upon by the district judge in association with the two judges previously called did not of itself invalidate the District Court's judgment dismissing the motion. Though that judgment of dismissal was not appealable directly to this court under section 266, even though participated in by three judges, it was reviewable by the Circuit Court of Appeals, and since it has been so reviewed, the issues presented are properly before us."

[35] Cannonball Transp. Co. v. American Stages, Inc., D.C.S.D.Ohio, 53 F.2d 1050. Cf. Hobbs v. Pollock, 280 U.S. 168, 172, 50 S.Ct. 83, 74 L.Ed. 353.

[36] Ex parte Poresky, 290 U.S. 30, 31, 32, 54 S.Ct. 3, 4, 78 L.Ed. 152: "But the provision requiring the presence of a court of three judges necessarily assumes that the District Court has jurisdiction. In the absence of diversity of citizenship, it is essential to jurisdiction that a substantial federal question should be presented. 'A substantial claim of unconstitutionality is necessary for the application of section 266.' In re Buder, 271 U.S. 461, 467, 46 S.Ct. 557, 559, 70 L. Ed. 1036; Louisville & Nashville R. Co. v. Garrett, 231 U.S. 298, 304, 34 S.Ct. 48, 58 L.Ed. 229; That provision does not *require* three judges to pass upon this initial question of jurisdiction." [Italics supplied]
Oklahoma Gas & Elec. Co. v. Oklahoma Packing Co., 292 U.S. 386, 391, 54 S. Ct. 732, 734, 78 L.Ed. 1318: "The issue is not one of the federal jurisdiction of the District Court, * * * but whether a final hearing by three judges was *prescribed* by the section, and hence whether this Court has jurisdiction to hear the appeal." [Italics supplied]

Supreme Court the determining consideration for us is one of propriety rather than of power. In a number of situations, and in a number of cases, it has been held that courts should voluntarily refrain from using or asserting power.[37] Where the use or assertion of power might be destructive of a well defined purpose of law or of a declared public policy such voluntarily imposed judicial restraint may be commendable.[38]

There seems to be no doubt of the propriety of action by the special three judge court—following the proper reference of a case to it—as to all questions involved in the litigation necessary for disposition of the prayer for injunction.[39] Presumably, it is proper, also, for the special court to act upon preliminary matters, where they are inextricably tangled with others which it is required to decide.[40]

The Supreme Court has said, however, that (1) the three judge procedure is an extraordinary one, imposing a heavy burden on federal courts, with attendant expense and delay; a procedure, designed for a specific class of cases, sharply defined, which should not be lightly extended;[41] (2) the limitations of the statute would be defeated were it enough to keep three judges assembled that a plaintiff could resort to a mere form of words in his complaint, with no support therefor in fact or law;[42] (3) if the right of direct appeal were extended to all cases in which such allegations appear, the restrictions placed upon appellate review in the Supreme Court, by the jurisdictional Act of February 13, 1925, would be measurably impaired;[43] (4) "when it becomes apparent that the plaintiff has no case for three judges, though they may have been properly convened, their action is no longer prescribed * * *;"[44] (5) and in such a case the statute contemplates that a court of three judges shall not continue to act.[45]

In view of these instructions, and without more, the impropriety of action by us in the present case seems obvious. The clear intent of the Supreme Court is further emphasized by its action, in a similar case, reversing and remanding the case to the District Court for further proceedings to be taken independently of the statute.[46]

It is true that, in a sense, the question presented here is one of first impression and that the present case can be distinguished from some, at least, of the cited

---

[37] United States v. Bank of New York & Trust Co., 296 U.S. 463, 480, 56 S.Ct. 343, 80 L.Ed. 331; Commonwealth of Pennsylvania v. Williams, 294 U.S. 176, 185, 55 S.Ct. 380, 79 L.Ed. 841, 96 A.L.R. 1166; Z. & F. Assets Realization Corp. v. Hull, 72 App.D.C. 234, 239, 114 F.2d 464, 469, affirmed 311 U.S. 470, 61 S.Ct. 351, 85 L.Ed. 288.

[38] Healy v. Ratta, 292 U.S. 263, 270, 54 S.Ct. 700, 78 L.Ed. 1248; Matthews v. Rodgers, 284 U.S. 521, 525, 52 S.Ct. 217, 76 L.Ed. 447; State ex rel. Sherrill v. Milam, 116 Fla. 492, 156 So. 497.

[39] Sterling v. Constantin, 287 U.S. 378, 393, 53 S.Ct. 190, 77 L.Ed. 375; Davis v. Wallace, 257 U.S. 478, 482, 42 S.Ct. 164, 66 L.Ed. 325; Sovereign Camp, W. O. W. v. Murphy, S.D.Iowa, 17 F.Supp. 650, 652; Public Service Commission v. Brashear Freight Lines, Inc., 312 U.S. 621, 625, 61 S.Ct. 784, 85 L.Ed. 1083.

[40] See Oklahoma ex rel. Phillips v. Guy F. Atkinson Co., D.C.E.D.Okl., 37 F.Supp. 93, 96, affirmed 313 U.S. 508, 61 S.Ct. 1050, 85 L.Ed. 1487; Tennessee Elec. Power Co. v. Tennessee Valley Authority, 306 U.S. 118, 136, 59 S.Ct. 366, 83 L.Ed. 543.

[41] Oklahoma Gas & Elec. Co. v. Oklahoma Packing Co., 292 U.S. 386, 391, 54 S.Ct. 732, 78 L.Ed. 1318; Ex parte Collins, 277 U.S. 565, 569, 48 S.Ct. 585, 72 L.Ed. 990; California Water Service Co. v. Redding, 304 U.S. 252, 255, 58 S.Ct. 865, 82 L.Ed. 1323.

[42] Oklahoma Gas & Elec. Co. v. Oklahoma Packing Co., 292 U.S. 386, 391, 54 S.Ct. 732, 78 L.Ed. 1318. Cf. Pacific Elec. Ry. v. Los Angeles, 194 U.S. 112, 118, 24 S.Ct. 586, 48 L.Ed. 896.

[43] Oklahoma Gas & Elec. Co. v. Oklahoma Packing Co., 292 U.S. 386, 391, 54 S.Ct. 732, 78 L.Ed. 1318. See Smith v. Wilson, 273 U.S. 388, 47 S.Ct. 385, 71 L.Ed. 699. Cf. United States and Interstate Commerce Commission v. Alaska Steamship Co., 253 U.S. 113, 40 S.Ct. 448, 64 L.Ed. 808; California Water Service Co. v. Redding, 304 U.S. 252, 255, 58 S.Ct. 865, 82 L.Ed. 1323.

[44] Oklahoma Gas & Elec. Co. v. Oklahoma Packing Co., 292 U.S. 386, 391, 392, 54 S.Ct. 732, 734, 78 L.Ed. 1318; Smith v. Wilson, 273 U.S. 388, 47 S.Ct. 385, 71 L.Ed. 699. Cf. Hobbs v. Pollock, 280 U.S. 168, 50 S.Ct. 83, 74 L.Ed. 353.

[45] California Water Service Co. v. Redding, 304 U.S. 252, 255, 58 S.Ct. 865, 82 L.Ed. 1323. Cf. Public Service Commission v. Brashear Freight Lines, Inc., 312 U.S. 621, 625, 61 S.Ct. 784, 85 L.Ed. 1083.

[46] Gully v. Interstate Natural Gas Co., 292 U.S. 16, 19, 54 S.Ct. 565, 78 L.Ed. 1088.

decisions of the Supreme Court, on the ground that the complaint poses a controversy which, considered on the merits of its allegations alone, brings the case unquestionably within the terms of the statute.[47] However, the complaint also shows upon its face that the United States is an indispensable party; hence, as we have indicated, the complaint must be dismissed.[48] Moreover, even if we look beyond the motion of defendant Ickes and note the presence of an issue between plaintiffs and defendant Fraley which might otherwise have made proper, action by a three judge court,[49] that is not sufficient, under the circumstances previously described, and in the absence of the United States as a party, to continue the present court in existence.[50] The result is to make action by a three judge court just as inappropriate as in the cited decisions of the Supreme Court.

 It may be argued, persuasively, that convenience and the desirability of expedition in disposing of a case such as that here presented points to action by the special court instead of reference back to a single judge.[51] On the other hand, compliance with the instructions of the Supreme Court seems calculated, in the long run, to result in greater good than will the satisfaction of convenience in a particular case. Repeated, though unreproved, indulgence in impropriety cannot form the basis for proper practice.[52] And if, on the other hand, a single judge should err on the side of caution in not requesting the convening of a special court, there is process available to test the propriety of his action.[53] Presumably the same remedy is

[47] In the following cases, on special appeal to the Supreme Court from decisions of three judge district courts, the case was remanded to the district court for further proceedings to be taken independently of the special procedure, for the reason that the controversy was not of such nature as to make the special procedure applicable. Oklahoma Gas & Elec. Co. v. Oklahoma Packing Co., 292 U.S. 386, 392, 54 S.Ct. 732, 78 L.Ed. 1318 (no basis for equitable relief, the state officers being powerless to impose penalties under the circumstances); Gully v. Interstate Natural Gas Co., 292 U.S. 16, 18, 54 S.Ct. 565, 78 L.Ed. 1088 (an assessment, rather than the statute under which it was made, was the basis for complaint); International Ladies' Garment Workers' Union v. Donnelly Garment Co., 304 U.S. 243, 251, 58 S.Ct. 875, 82 L.Ed. 1316 (complaint did not pray that enforcement of an Act of Congress be enjoined); Rorick v. Board of Commissioners, 307 U.S. 208, 212, 59 S.Ct. 808, 810, 83 L.Ed. 1242 (the statute assailed was not legislation "of general application"); Phillips v. United States, 312 U.S. 246, 252, 61 S.Ct. 480, 85 L.Ed. 800 (complaint did not attack validity of the state law, but only exercise by the governor of his power to declare martial law); William Jameson & Co. v. Morgenthau, 307 U.S. 171, 173, 59 S.Ct. 804, 83 L.Ed. 1189 (administrative action rather than the statute under which it was taken was the basis of the complaint).

[48] Morrison v. Work, 266 U.S. 481, 486, 45 S.Ct. 149, 69 L.Ed. 394; Haskins Bros. & Co. v. Morgenthau, 66 App.D.C. 178, 181, 85 F.2d 677, 680, certiorari denied, 299 U.S. 588, 57 S.Ct. 118, 81 L.Ed. 433.

[49] Stratton v. St. Louis Southwestern Ry., 282 U.S. 10, 15, 51 S.Ct. 8, 75 L.Ed. 135; Ex parte Poresky, 290 U.S. 30, 31, 54 S.Ct. 3, 78 L.Ed. 152.

[50] Haskins Bros. & Co. v. Morgenthau, 66 App.D.C. 178, 181, 85 F.2d 677, 680, certiorari denied 299 U.S. 588, 57 S.Ct. 118, 81 L.Ed. 433.

[51] Charles Evans Hughes, Address of the Chief Justice of the United States, 10 Proc.Am.L.Inst. 32, 33–34: "Appeals in such cases lie directly to the Supreme Court from orders granting or denying an interlocutory injunction, as well as from final decrees granting or denying a permanent injunction. . . . In this highly important class of cases it is desirable that final hearings should be expedited and that the delays incident to futile appeals from interlocutory orders should be avoided."; Hutcheson, A Case for Three Judges, 47 Harv.L.Rev. 795, 820.

[52] Petition of Public National Bank of New York, 278 U.S. 101, 105, 49 S.Ct. 43, 44, 73 L.Ed. 202: " * * * the propriety of the hearing before three judges was not considered in the cases to which we are referred, and they cannot be regarded as having decided the question." Ex parte Collins, 277 U.S. 565, 568, note 4, 48 S.Ct. 585, 72 L.Ed. 990.

[53] Mandamus, cf. Fed. Rules Civ.Proc. § 81(b), 28 U.S.C.A. following section 723c, is the proper remedy where a single district court judge errs in refusing to convene a three judge court. Ex parte Bransford, 310 U.S. 354, 355, 60 S.Ct. 947, 84 L.Ed. 1249; Stratton v. St. Louis Southwestern Ry., 282 U.S. 10, 16, 51 S.Ct. 8, 75 L.Ed. 135.

available where a three judge court errs in refusing to act upon a case properly presented to it for determination.[54]

Our decision is, therefore, that this court, as presently constituted, should refrain from passing on the motion. The case is remitted to Mr. Justice LETTS, sitting as a single judge, for appropriate action.[55]

[54] Petition of Public National Bank of New York, 278 U.S. 101, 103, 49 S.Ct. 43, 73 L.Ed. 202.

[55] Cf. Illinois Cent. R. R. v. Railroad Commission of Kentucky, D.C.E.D.Ky., 1 F.2d 805, 807.